**KEY et al. v. STATE ex rel. HODGE, Co. Atty.**

No. 15099—Opinion Filed Feb. 19, 1924.

(Syllabus.)

**1. Intoxicating Liquors —Nuisance — Procedure for Abatement.**

Section 7022, Compiled Statutes 1921, in relation to the enforcement of prohibitory laws, authorizes the state on relation of the county attorney to sue and obtain injunctive relief, but the same is a civil action and not a special proceeding, and must be commenced by the filing of a petition and causing a summons to be issued thereon, as required by section 231, Compiled Statutes 1921, and the procedure is governed by the general Code of Civil Procedure relating to suits in equity.

**2. Appearance—General Appearance—Motion to Vacate Injunction on Nonjurisdictional Grounds.**

Where a petition is filed in the district court and no summons issued, as required by law, and the court issues a temporary injunction against the defendant therein, and the defendant, though not served with process, files a motion therein to vacate and set aside the temporary injunction and said motion is based on nonjurisdictional as well as jurisdictional grounds, the same constitutes a general appearance of the defendant, notwithstanding the recitals in the motion to the contrary, and the defendant thereby waives the issuance and service of summons and submits himself generally to the jurisdiction of the court.

**3. Intoxicating Liquors—Abatement of Nuisance by Injunction — Compliance with Rules of Evidence.**

The recognized rules of evidence applicable to judicial proceedings generally must be followed in the admission of testimony in the trial of injunction proceedings, under section 7022, Compiled Statutes 1921. These rules, although often made the subject of severe criticism, are the best that the experience of centuries has been able to produce.

**4. Same — Necessary Showing for Injunction.**

The injunction authorized by section 7022, Compiled Statutes 1921, must not be used to confiscate the property or business of the owner, as a penalty for violation of the law. Under the provisions of said section, the court will not issue an injunction closing a business building in order to abate a nuisance carried on therein, unless the evidence clearly establishes the fact that otherwise the public nuisance would likely continue unabated therein. Such proceeding is one in equity, and upon appeal to this court, the judgment of the lower court issuing such an injunction will be reversed and set aside, in event the same appears to be clearly against the weight of evidence.

Error from District Court, Carter County; W. F. Freeman, Judge.

Injunction by the State on the relation of John L. Hodge, County Attorney, against Emmett Key and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Sigler & Jackson, for plaintiffs in error.

John L. Hodge, for defendant in error.

LYDICK, J. On January 9, 1924, the State of Oklahoma ex rel. John L. Hodge, county attorney of Carter county, Okla., filed a petition in the district court of that county, naming Emmett Key, Gus Key, and J. A. Bodovitz as defendants. The parties are referred to herein according to the position they occupied in the lower court. In the petition, it is alleged that the defendant Bodovitz is the owner of a certain building at 113 Broadway in Ardmore; that he rents same to Emmett Key and Gus Key, defendants, who ostensibly use same for the purpose of operating a drug store therein known as the Key Drug Company, but that in truth and in fact, and with the knowledge and consent of defendant Bodovitz, they are engaged in carrying on therein an illegal traffic in intoxicating liquor. Now claiming in this court to have acted under section 7022, Compiled Statutes, 1921, in relation to the enforcement of the prohibitory law, the state sought an injunction against defendants, by the terms of which the sheriff should seize and close the building referred to. Immediately upon the filing of the petition and without the issuance of summons or even the filing of a praecipe therefor, and without notice to or knowledge of the defendants, the county attorney presented the petition to the district court. The county attorney produced no evidence to support his petition, except the petition itself, verified by one John W. Ginn. There is nothing in

the record to show who John W. Ginn may be, and if he knew anything about the facts, which he unqualifiedly verified in the petition, he failed to testify to them as a witness in the later trial of the case.

The court, in January 9, 1924, in this strictly ex parte hearing, issued what it termed a "temporary restraining order," by the terms of which the sheriff was directed to seize, lock, and close this building, and prevent defendants from entering upon said premises or using same for any purposes whatsoever. In said order, it is recited that "on the 18th day of January, 1924, and at the hour of 10 o'clock a. m., be and the same is hereby set as the date and time for hearing thereof." As later disclosed in the record, the court intended that hearing to be a final one, for the determination of whether a permanent injunction should issue, giving defendants only nine days to prepare for same. The order provided that a copy thereof be served upon the defendants.

On January 11, 1924, the Supreme Court, upon petition filed herein by the defendants, prohibited the enforcement of that restraining order until defendants could be heard thereon in the district court. On the next day, January 12th, the defendants jointly filed a motion in the district court to dismiss the case, for the reason that no summons was served, alleging therein that they were "not submitting themselves to the jurisdiction of the court." The county attorney contended that the issuance of summons was unnecessary. On January 18th, the court overruled this motion to dismiss. The defendants excepted and asked for time to plead, which request the court summarily denied and ordered the case then and there to final trial. Thereupon the defendants filed a motion to vacate the order of injunction. The enforcement of same had been prohibited by the judgment of the Supreme Court until the defendants could be heard in the district court. The motion of the defendants sought to vacate the injunction upon jurisdictional grounds to wit, the failure to have issued a summons in the case, and joined with it also nonjurisdictional grounds, to wit, that they had not been guilty of any violation of the law set up in the plaintiff's petition. The court proceeded to hear this motion; testimony was produced showing that no summons had been issued. The county attorney introduced evidence showing that, a day or two after this petition had been filed and the building closed by temporary injunction, Guy Sigler, attorney for defendants, walked into the district court room and asked the judge of the court something

about when these cases would be heard, and contended that the defendants thereby waived the issuance and service of summons. The court, evidently being of the same opinion, overruled the motion to vacate. Thereupon the court overruled the protest of defendants that they be given time to plead and to prepare for trial, and summarily proceeded to try the case upon its merits nine days after the suit had been filed and without the issuance of summons therein.

The only competent and material evidence produced by the state is as follows: A hired itinerant detective, a stranger to the jurisdiction of that court, testified to the effect that on January 5, 1924, he bought of the defendant Emmett Key, at the drug store involved, a drink and a half-pint of corn whisky for $4.50. Two deputy sheriffs said that on an uncertain date, a year or so before, they had entered this drug store and seized two half gallon jars of corn whisky. The county attorney performed the usually undifficult task of having the deputy sheriffs testify that the place which they raided had a bad reputation. The state itself offered no evidence to show that the defendants Emmett Key and Gus Key owned or had anything to do with the operation of the drug store or other business in the building, but the omission was cured by the defendants proving these facts in making their defense. There was no evidence to show that the defendant Bodovitz had any knowledge whatsoever of the keeping or sale of any liquor in that place of business. Some testimony was given to the effect that the place had been closed once before by injunction, but we cannot know whether that judgment of the court was based on as little evidence as we find in the case at bar. The foregoing constitutes the state's proof.

It is true that, over the persistent objections made by attorney for defendants, the court permitted 15 typewritten pages of testimony by the sheriff, in which he related information that he gained from reading "a bunch of letters from other peace officers over the state and in Kansas" concerning the good work done by the detective witness. Benham, and what others had told him over long distance telephone and otherwise concerning that witness: conversations passing from time to time between the sheriff and this detective—what whisky the detective had seized in other places, and brought to the jail and county attorney's office, what instructions the sheriff had given him from time to time, what this witness had told the sheriff about what he had done at defendants' place of

business, and divers and sundry other statements and actions, all without the presence and hearing of the defendants, and incompetent and immaterial under every known rule of evidence applicable thereto. On cross-examination, the witness Benham pointed to a man in the court room other than Emmett Key as the man from whom he had purchased this half pint of whisky, and who he testified was Emmett Key. However, when attorney for defendants sought to cross-examine this witness upon this very material point as to the identification of the man he claimed had sold him the whisky, the county attorney objected, and the court, from the bench, said: "If that is all Mr. Sigler has, let him play with it," but instantly changed his mind and directed attorney for the defendants to proceed otherwise. Likewise, the court refused the attorney for defendants permission to cross-examine witness Benham as to how and in what manner he paid the $4.50 for the corn whisky, and otherwise seriously circumscribed the rights of the defendants in that regard. Apparently endeavoring to overcome the voluminous incompetent testimony of the sheriff relating to hearsay recommendations of the witness Benham's good character, attorney for defendants, relative thereto, sought to show that the witness had been in jail charged with car stealing; incompetent, it is true, but no more so than the testimony of the state received over defendants' protests. This drew from the court a chastisement of defendants' counsel for failure to observe the rules of evidence, but it is not clear just what rules of evidence were being applied generally to the case.

Defendant Emmett Key testified on behalf of the defendants that he owned the drug store involved and had owned it since January 15, 1923; denied that he had sold whisky to witness Benham or anybody else, or that whisky had been sold by any one in that place of business; testified that they had a $6,000 stock of goods and were doing a good business; that he paid $75 per month rent, but there is no suggestion in the evidence that this was a higher rent than the building would be worth for ordinary legal business purposes. Witness on cross-examination admitted that 7 years ago he had been convicted on a whisky charge in the federal court, the transaction not occurring on the premises involved in this case, and that at another time he paid $100 fine in a whisky case, but we know not when nor where.

Tom Caldwell, a registered pharmacist employed in such drug store, testified that the firm had a regular line of drugs and sundries, compounded prescriptions, and operated the drug store in the usual manner, doing a fairly good business, and no whisky was sold or handled in that place.

The lower court bases some of its findings upon "judicial knowledge of the proceedings of this court," to wit, the lower court, which judicial proceedings the court there considered cannot be known to this court, because same were not identified or introduced in evidence and form no part of the case-made before us. With only the evidence above referred to, the lower court finds:

"That the Key drug store is operated merely as a shield behind which Emmett Key can sell whisky and violate the prohibitory law; that while there may be some legitimate business conducted, that the legitimate business is very small and insignificant compared to the illegitimate business conducted through the drug store by the selling of whisky, that the legitimate business would not maintain the establishment."

The court thereupon entered its judgment restraining all of the defendants for a period of one year from operating a drug store in that building; ordered the sheriff to seize the building and lock it up, and permit nothing to be taken therefrom except the "personal possessions" of Emmett Key.

Defendants filed a motion for new trial, which was overruled, and bring the case here by petition in error with case-made attached. The assignments of error made by plaintiffs in error are based upon two propositions, as follows:

(1) That the court was without jurisdiction because no summons was issued in the case.

(2) That the judgment is not supported by the evidence and for that reason is contrary to law.

Considering the first proposition, we are reminded that it is provided in section 231, Compiled Oklahoma Statutes, 1921, as follows:

"A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon."

This section applies with equal force to suits in equity as to actions at law. Unless complied with or its provisions waived by defendant, a judgment rendered in an action either at law or equity, other than in a mere special proceeding, is void. Such judgment would deprive the defendant of due process of law, a sacred guar-

anty of our constitutional law. Section 7022, Compiled Statutes, 1921, in relation to the enforcement of the prohibitory laws, authorizes the state ex rel. the county attorney, to sue and obtain injunctive relief. Such proceeding constitutes a civil action, and not a special proceeding. The rules of procedure as to the beginning of the suit are governed by the above section and by the general Code of Civil Procedure, except that no injunction bond is required. The injunction authorized by said section to be granted at the commencement of the action is a temporary one, and the procedure in its allowance and termination, except as to the bond, is governed by article 10. ch. 3, of the Civil Code, relating to restraining orders and temporary injunctions. It therefore follows that the temporary injunction issued in this case was void, and this court, upon application here by the defendants, properly issued its writ of prohibition against· the enforcement thereof. The contention of the county attorney that the recitals in the order of temporary injunction requiring the defendants' appearance 9 days thereafter to show cause why same should not be made permanent take the place of summons, is not sufficiently meritorious to require consideration. Of no greater merit is the county attorney's suggestion that summons was waived by the action of the attorney for defendants when he inquired of the court when the case would be heard. By the filing of a petition and issuance of summons, a suit like this can be begun and temporary relief obtained at the time of the commencement of the action, but the defendant, before being compelled to go to final trial, must be given his day in court with a statutory time to plead and prepare in this the same as in all other actions. The county attorney in his brief complains that the application of these statutory rules of procedure to a county attorney will work a great injustice to the people. This is not true, if the county attorney will learn these laws and rules and follow them.

The defendants here urge that the lower court, for these reasons, was without jurisdiction to render its final judgment of injunction, from which they have appealed to this court. That would be true, except that when the defendants in the lower court filed their motion to vacate the temporary order theretofore made and based same upon nonjurisdictional grounds, as well as jurisdictional grounds, they effectively made a general appearance, notwithstanding the recitals in their motion to the contrary, and thereby waived the issuance and service of summons and submitted themselves generally to the jurisdiction of the court. See Ziska v. Avery, 36 Okla. 405, 122 Pac. 722; Pratt v. Pratt, 41 Okla. 577, 139 Pac. 261; Morgan v. Karcher, 81 Okla. 210, 197 Pac. 433.

The defendants thereby did not waive their right for. time to plead and prepare for final trial. The action of the lower court, in summarily denying these rights and forcing these defendants into final trial 9 days after the filing of the petition in the case, a material portion of which time was necessarily given in coming into this court to obtain a writ of prohibition against the enforcement of the lower court's void temporary injunction, was at least an arbitrary abuse of discretion by the lower court, a procedure not warranted by our Code of Civil Procedure. These actions, however, do not go to the jurisdiction of the court, and the failure of defendants to file in the lower court a motion for continuance may preclude them from urging that error here. However, the county attorney does not in his brief urge such a waiver, and it appears that the proceedings in the lower court were being dispatched so rapidly that the defendants likely had no time to prepare a statutory motion for continuance after this request for time to plead was denied. As the case must be reversed on the soundness of the defendants' second proposition, we need not further consider this matter here.

We now turn to consideration of the second proposition urged for the reversal of this case, to wit: That the judgment is not supported by the evidence, and for that reason it is contrary to the law.

In the case of Hill et al. v. State ex rel. County Attorney of Grady County, 45 Okla. 367, 145 Pac. 492, this court in a case similar to the one at bar found the evidence sufficient to justify the court in declaring a going business in a well-located building to be a public nuisance, and in rendering judgment to abate same. The lower court had ordered the building to be seized by the sheriff and locked for one year. Without passing upon the legal power of the lower court to so order, Mr. Justice Kane, speaking for the court, held the same to be at least an erroneous application of jurisdiction and modified the judgment so as to permit the owner to carry on a lawful business therein under a $5,000 bond to pay the state that sum as liquidated damages in event the owner should violate the prohibitory laws therein. This rule was followed again by this court in Balch. v. State ex rel. Grigsby, County Attorney, 65 Okla. 146,

164 Pac. 776. In the later case of Gragg v. State ex rel. Selby, 73 Oklahoma, 175 Pac. 201, this court in a case similar to the one at bar said in section 3 of the syllabus:

"Though the trial court may legally abate any nuisance and enjoin the continuation of the same under provision of the prohibitory law or the general provision of the statutes of this state, yet the court is without authority to enjoin the use, for legitimate purposes, of the real property in which the nuisance abated and enjoined is maintained."

In the body of the opinion, the court said of the law in question:

"The law under review is for the prevention of nuisances, and not for a partial confiscation of the real property in which the nuisance has its domicile."

The court there cites and quotes in support of the opinion from 20 Ruling Case Law, sec. 94, page 481; J. B. Respass et al. v. Commonwealth of Ky. ex rel. James Breathitt, Atty. Gen., 131 Ky. 807, 115 S. W. 1131, 21 L. R. A. (N. S.) 836; The State of W. Va. ex rel. Fred O. Blue v. Baltimore & Ohio Railroad, 78 W. Va. 526, 89 S. E. 288, L. R. A. 1916F, 1001.

Perhaps no other state has more drastic penal laws for the punishment of those who dare violate the prohibition laws, nor statutes better calculated to prevent the continuance of a public nuisance. The penal statutes are designed as punishment for crime; the remedial statutes for the prevention of crime. If the defendants in this case have done the acts alleged in the petition, they may be thoroughly and sufficiently punished under the penal statutes. The injunction authorized by section 7022, supra, must not be used to confiscate their property or business as a further penalty. Even though the law should be interpreted to authorize the court, in a most extreme case and in order to abate a public nuisance, to lock a business building for a given period and prevent the owner from conducting even a legal business therein, it would be an arbitrary exercise of power and an abuse of judicial discretion to do so unless the evidence clearly establishes the fact that otherwise the public nuisance would continue unabated therein. It was never intended that under this law a valuable business building should be confiscated by the state for a long period of time merely because once a year, for a period of two or three years, a half pint, or a half dozen pints, of whisky should be annually found or sold therein, or because slight evidence was obtained that the place had a

bad reputation, or that one of the owners of the business in the building, seven years before, and somewhere not named, had violated the prohibitory laws of the federal government and at another undisclosed time and place had paid a fine of $100 for a similar offense, although the owner of the building was not shown to have known or have reason to know that whisky had even been sold in the building. Yet these are all the substantially material facts in this case supported by the competent evidence of the state. The undisputed testimony shows that the defendants have a $6,000 stock of genuine drugs and sundries in the building, and are conducting a fairly prosperous bona fide drug and prescription business therein under the management of a licensed pharmacist not even charged with a criminal offense, who verifies these facts and stands before the court unimpeached.

It is alleged that in the great city of Ardmore and in a substantial building well located upon a principal street in the heart of the business section where hundreds of good people daily pass by, the defendants are operating a veritable dive "to the great detriment of the public weal and in direct, flagrant, and absolute defiance of law." So it is alleged, but from the thousands of Ardmore's good citizens comes not a witness that a drop of liquor was ever found there, except the testimony of two deputy sheriffs who found two half gallons there a year or so ago, and an itinerant detective who says he recently bought a drink and a half pint there from one whom he in an uncertain manner identified as one of these defendants. This knowledge was not even attempted to be brought home to the owner of the building. Reference was made to some former adjudication that liquor had been sold in the place, but the record is not produced before us and no plea of res adjudicata was made in the pleadings. The judgment rendered closes this valuable building for a year even to legitimate business and would naturally largely destroy the material value of the $6,000 stock of legitimate property therein located. This is too drastic a judgment to stand unless clearly supported by the evidence, and being a decree in equity, this court on appeal must weigh the evidence on which the judgment is based. In our opinion, the finding of the lower court that this place is a public nuisance and that same is operated merely as a shield behind which Emmett Key can sell whisky and violate the prohibitory law, and that if it were not for the illegitimate business conducted through the drug store by the selling of whisky the legiti-

mate business would not maintain the establishment, is clearly contrary to the weight of evidence. It does, in our opinion, appear from the weight of the evidence that the place is not such a public nuisance as can be well abated only by closing its doors.

This court in reaching this conclusion is guided only by the evidence in the record, and that is all the evidence before the lower court and all it had the right to consider. If this place is such a nauseating hole of debauchery as claimed by the county attorney he should have brought before the court more and better evidence to establish the assertion. If the evidence is available and he fails to produce it, the citizenship suffers from his derelictions of duty. These defendants must be given a fair opportunity to present their defenses. The testimony received is not in substantial compliance with the well-established rules of evidence, which rules, although often subjected to criticism by laymen, are the fairest that centuries of judicial experience have been able to write. Final judgment hurriedly rendered on insufficient evidence and contrary to law not only delays but thereby often directly produces an avoidance of punishment to the guilty and brings criticism upon courts caused only by the dereliction of prosecuting officers. Courts with strong arms outstretched to protect society must at the same time protect citizens charged with crime from being deprived, on suspicion and prejudice and without proof, of life, liberty, or property in violation of the constitutional and statutory safeguards.

The judgment of the district court is reversed, and the case is remanded, with instructions to set aside the order of injunction and to grant a new trial herein; to forthwith return to the defendants the peaceable possession of all property seized under the order of injunction rendered by the lower court; to permit the defendants to further plead herein, and upon further trial, in event it appears by a preponderance of the evidence that the state is entitled to injunctive relief, to grant only such relief as from a preponderance of the competent evidence appears necessary in the enforcement of the laws involved and in accordance with this opinion of the court.

JOHNSON, C. J., and McNEILL, HARRISON, COCHRAN, NICHOLSON, and MASON, JJ., concur.