**ST. LOUIS-S. F. R. CO. v. BAYNE.**

No. 22542.  Jan. 22, 1935

Rehearing Denied Feb. 12, 1935.

E. T. Miller, Cruce & Franklin, and W. T. Stratton, for plaintiff in error.

Walter Mathews, for defendant in error.

PER CURIAM. The material facts in this case briefly stated are: That one Robert Wilson was employed by the St. Louis-San Francisco Railway Company on March 9, 1927, to do certain grading at Kelleyville, Okla.; and on March 11, 1927, entered into a similar contract with the railway company to do the same character of work at Stroud, Okla.; the total sum of these two contracts being $1,366.35.

On February 16, 1929, Robert Wilson assigned these two claims against the St. Louis-San Francisco Railway Company to Albert S. Bayne for $300. And Albert S. Bayne, who will be referred to as plaintiff, sued the St. Louis-San Francisco Railway Company, which will be referred to as defendant, for $1,366.35, the amount of the claims assigned him by Wilson, together with the accrued interest.

As a defense to this action, the St. Louis-San Francisco Railway Company pleaded that it paid, in satisfaction of these claims, a judgment rendered by the district court of Creek county, October 10, 1927, against Robert Wilson.

Bayne filed a verified reply denying the validity of said judgment, and pleading specifically that it is void. And attached a copy of all the pleadings, the orders, and the judgment in said action as exhibits to his reply.

Said pleadings attached as exhibits, and at the trial introduced in evidence, show that on October 4, 1927, Lucien B. Wright, as attorney for the Naifeh-Wilson Construction Company, a corporation, of Sapulpa, filed a suit against Robert Wilson and the American National Bank, of Sapulpa, in which it was alleged that Robert Wilson had assigned these two contracts to the Naifeh-Wilson Construction Company; and attached as an exhibit a copy of an unverified assignment of the two contracts. And further pleads that the Naifeh-Wilson Construction Company owed Naifeh & Son, a copartnership of Sapulpa, the sum of $1,366.-35. And further alleged that the checks in payment of these contracts had been forwarded by the railway company to the American National Bank at Sapulpa, and were at that time in the possession of said bank.

On said October 4, 1927, Naifeh & Son filed their plea of intervention, alleging that the Naifeh-Wilson Construction Company was indebted to them in the sum of $1,366.35, and asking for judgment against the Naifeh-Wilson Construction Company and Robert Wilson for said amount. And the intervener was also represented by Lucien B. Wright as attorney. And on the same day, or October 4, 1927, the court entered an order, in which he found that the contracts for the Kelleyville and Stroud work had been assigned to the Naifeh-Wilson Construction Company; and that said Naifeh-Wilson Construction Company was indebted to Naifeh & Son in the sum of $1,366.35, and ordered that the checks payable to Robert Wilson, which had been forwarded to the American National Bank of Sapulpa, for said sum, be delivered to the court clerk.

On October 10, 1927, Lucien B. Wright filed an unverified voluntary appearance and answer for Robert Wilson, in which answer Wilson is alleged to admit that he executed the assignment to the Naifeh-Wilson Construction Company, and also that Naifeh-Wilson Construction Company was indebted to Naifeh & Son in the sum of $1,366.35; and the answer asks that judgment be granted the intervener for said amount; and that Lucien B. Wright be authorized to indorse the checks and collect the money, and that he be allowed a fee of $100 for his services.

On said October 10, 1927, a judgment was entered by the court in the absence of Robert Wilson, in favor of the intervener, as prayed for; and ordered the clerk to deliver the checks to Lucien B. Wright, and ordered Lucien B. Wright to indorse them for and on behalf of Robert Wilson, and to

collect the money and retain $100 as his fee, and apply the residue to the payment of court costs and on the account of Naifeh & Son.

The reply also denied that Robert Wilson executed the assignment; alleged no summons was issued, and that Wilson was never legally advised of the pendency of said action, and that the judgment is void.

The trial court held that the Creek county judgment is void, and gave judgment for the plaintiff for the amount sued for. And the defendant appeals.

1. The defendant insists that the plaintiff's reply is a collateral attack upon the judgment of the district court of Creek county, and that the force of that judgment cannot be avoided in that way.

But that judgment was in the first instance pleaded and relied upon in this case by the defendant to defeat the claim of the plaintiff, which had been assigned to him by Robert Wilson. And under the doctrine of Southern Pine Lumber Co. et al. v. Ward et al., 16 Okla. 131, 85 P. 459, the trial court had a right to inquire into that judgment and into the proceedings in the district court of Creek county by which it was obtained, since they were relied upon and brought before the court by the railway company. And it claimed the benefit of said proceedings and judgment. The 9th paragraph of the syllabus in Southern Pine Lumber Co. v. Ward, supra, is :

"The jurisdiction of any court exercising authority over any subject may be inquired into in every other court when the proceedings of the former are relied on and brought before the latter by a party claiming the benefit of such proceeding."

This doctrine is followed by all subsequent cases of this court that have passed upon that question, and is in conformity to common sense and justice. If the railway company could plead the judgment as a defense, which it had a right to do, then surely the plaintiff could plead any jurisdictional defect, or question the validity of the judgment relied upon to defeat his claim, and have the court pass upon its validity and upon the validity of the proceedings under which it was obtained.

2. We think the trial court was right in holding that the judgment is void.

In the first place it was obtained without due process of law, for the record shows that no summons was ever issued, and the defendant Robert Wilson was never legally advised of the pendency of the suit.

No citizen can legally be deprived of his property except in conformity to the laws of the land. He must have the notice provided by law—he must have an opportunity to be heard. A court of justice should proceed only upon inquiry and render judgment only after trial. Every citizen holds his life, liberty, property, and immunities under the constitutional and statutory laws of our commonwealth. And the statute provides specifically that a civil action is commenced in a court of record by filing a petition and causing summons to be issued thereon. Section 231, C. O. S. 1921 (sec. 164, O. S. 1931). And no suit can be said to be commenced, by the mere filing of a petition, without causing summons to be issued thereon, and without any proper entry of appearance.

In Key et al. v. State ex rel. Hodge, Co. Atty., 101 Okla. 211, 224 P. 549, this court, in construing section 231, said:

"This section applies with equal force to suits in equity as to actions at law. Unless complied with * * * a judgment rendered in an action either at law or equity, other than in a mere special proceeding, is void. Such judgment would deprive the defendant of due process of law, a sacred guaranty of our constitutional law."

3. But it is urged that Robert Wilson, by attorney, filed a voluntary appearance and answer confessing judgment. This, Robert Wilson denies. And denies he executed the assignment to the Naifeh-Wilson Construction Company. And testifies that he never employed Lucien B. Wright to represent him in that action, and never knew of the pendency of the action until long after judgment had been rendered. But, aside from his denial, the purported confession of judgment is not in conformity to the law of the land. Section 673, C. O. S. 1921 (sec. 406, O. S. 1931), provides specifically that:

"Any person indebted, or against whom a cause of action exists, may personally appear in a court of competent jurisdiction, and, with the assent of the creditor or person having such cause of action, confess judgment therefor; whereupon judgment shall be entered accordingly."

But the record shows that Robert Wilson did not appear personally and confess this judgment, but appeared and confessed judgment by an attorney.

Section 678, C. O. S. 1921 ( sec. 411, O. S. 1931), provides specifically that:

"Every attorney, who shall confess judg-

ment in any case, shall, at the time of making such confession, produce the warrant of attorney for making the same to the court before which he makes the confession, and the original, or a copy of the warrant, shall be filed with the clerk of the court in which the judgment shall be entered."

Section 674 (407) provides that the warrant of the attorney to confess judgment must be acknowledged or proved in the same manner as are the acknowledgments to the conveyances of land. And it is specifically provided that, when that authority is given and thus authenticated, then the attorney may confess judgment and may even do so without any previous process. But the record shows that no such authority was given or authenticated or filed in the case at bar. And the judgment entered by confession of an attorney, without compliance with these statutory requirements, is void, for these requirements are mandatory and were enacted for the protection of the defendant and for the protection of the court as well.

4. Besides the court never obtained jurisdiction of the checks which were mailed to the American National Bank, by impounding them, or by attachment, garnishment, or any other process of law.

It appears from the uncontradicted testimony of Robert Wilson, and as an explanation as to why the checks may have been sent to the bank, that prior to 1927, he did some work for the St. Louis-San Francisco Railway Company at or near Sapulpa, and during the progress of that work became indebted to the American National Bank, and directed the railway company to forward the last check due him for that work to the bank, in payment of the note he owed the bank, but he testified that was the only check he ever authorized the railway company to send to the American National Bank, and the bank claimed no interest in the checks for the Kelleyville and Stroud work.

We know of no rule of law that would give the court jurisdiction to take possession of these checks without some kind of legal process.

We think this judgment is void on its face, and requires only an inspection of the judgment roll to demonstrate its want of validity. The term "judgment roll" is frequently referred to in -the opinions of courts, but they do not usually define what it consists of. The judgment roll under our procedure includes the petition, the summons, return and process and pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court which the statute requires the court clerk to note in the civil appearance docket. C. O. S. 1921, sections 686 to 688, inclusive (secs. 433-5, O. S. 1931). Pettis v. Johnston, 78 Okla. 277, 190 P. 681.

An inspection of the civil appearance docket of the district court of Creek county, which is a part of the case-made in the case at bar, shows a complete lack of jurisdiction of the person of Robert Wilson and of the checks or subject-matter of the action in the district court of Creek county, and the trial court did not err in holding that the judgment is void.

Judgment is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Rutherford Brett, Stephen A. George, and J. E. Williams in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved ·by the Supreme Court. After the analysis of law and facts was prepared by Mr. Brett, and approved by Mr. George and Mr. Williams, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.