**GRAGG et al. v. STATE ex rel. SELBY,
Co. Atty.**

No. 9502—Opinion Filed July 30, 1918.

Rehearing Denied Sept. 24, 1918.

(175 Pac. 201.)

**1. Jury—Right to Jury Trial.**

In an action to abate a public nuisance, the defendant is not entitled to a trial by jury.

**2. Intoxicating Liquors—Liquor Nuisance—Abatement—Constitutional Law.**

That part of section 14, art. 3, c. 69, Session Laws 1907-08, as amended by section 13, c. 70, Session Laws 1911, which provides that "all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances,'' and upon the judgment of any court of record finding such place to be a nuisance under this section, the sheriff, his deputy, or any undersheriff or any constable or marshal, or police in any city where the same is located, shall be directed to shut up and abate such place or take possession thereof and destroy the liquor found therein, the keeping or sale of which is prohibited by this act, together with all signs, screens, bars, glasses, and other property used in keeping and maintaining the said nuisance, is not in violation of any provision of the Constitution of this state.

**3. Same—Injunction—Use of Real Property.**

Though the trial court may legally abate any nuisance and enjoin the continuation of the same under provision of the prohibitory law or the general provision of the statutes of this state yet the court is without authority to enjoin the use, for legitimate purposes, of the real property in which the nuisance abated and enjoined is maintained.

**4. Same—Abatement—Evidence.**

The evidence in this case carefully considered, and the great weight thereof found to sustain the judgment of the court abating the nuisance complained of and enjoining its continuance.

(Syllabus by Collier, C.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by the State, on the relation of Charles B. Selby, County Attorney, against Billy Gragg and others. Judgment for plaintiff, and defendants bring error. Injunction granted in the case modified, and decree otherwise affirmed.

McAdams & Haskell and D. S. Levy, for plaintiffs in error.

Chas. B. Selby, Co. Atty., and Porter H, Morgan. Geo. M. Callihan, J. W. Scothorn, and Henry M. Gray, Asst. Co. Attys., for defendant in error.

Opinion by COLLIER, C. This proceeding was instituted by the state, on the relation of the county attorney of Oklahoma county, under that part of section 14, art. 3, c. 69, Session Laws 1907-08, as amended by section 13 Session Laws 1911, c. 70, which provides:

"And all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances, and upon the judgment of any court of record finding such place to be a nuisance, under this section, the sheriff, his deputy or under-sheriff or any constable of the proper county, or marshal or police of any city where the same is located, shall be directed to shut up and abate such place by taking possession thereof and destroying all liquors found therein, the keeping or sale of which is prohibited by this act, together with all signs, screens, bars, bottles, glasses and other property used in keeping and maintaining said nuisance."

Hereinafter the parties will be designated as they appeared in the trial court.

At the commencement of the trial, the defendants demanded a trial by jury, which was overruled and excepted to.

The material evidence in the case seems to be fully stated in the finding of facts by the court, and we deem it unnecessary to incumber the record by reciting the evidence. At the conclusion of the evidence, the defendant demurred thereto, which was overruled and excepted to.

The court made the following findings of fact:

"First. The court finds: That the defendant Billy Gragg owns the premises known as the Country Inn and has a deed to the real estate upon which the building is situated.

"Second. That for the past seven or eight months the said Billy Gragg, together with Fred Cameron, has conducted the place known as the Country Inn, as a business proposition. That Billy Gragg together with his wife, has resided in a portion of the building on the premises during said time.

"Third. That the Country Inn during the past seven or eight months has been and is now conducted as a public place. That said place is situated about three miles from the Lee-Huckins Hotel in the city of Oklahoma City, said building being situated outside of the city limits of Oklahoma City. That the

proprietors of the Country Inn make a spe cialty of serving a certain kind of chicken dinner, at all hours of the day and night, but more particularly from 7 o'clock p. m. to 1:30 and, 2 o'clock a. m. the following day. That the proprietors, in connection with said premises, conduct a small dance hall, in which is situated an electrical piano, which is operated by dropping a quarter in the slot, and that this piano furnishes music for those who desire to dance. That near the entrance to said dance hall are maintained certain rooms, which are each furnished with a table and chairs, and which have a curtain in front of the doorway. That there is situated in said building a place where soft drinks are dispensed over a small counter or bar, served by a man placed there to wait on the trade; and that soda pop, Bevo, and other soft drinks, including cider, are sold at 25 cents per bottle. That there is a cash register behind said counter or bar and a mirror situated behind the said counter or bar.

"Fourth. The court finds that a large number of people visit said premises for the purpose of dancing and eating from the hours particularly between 7 p. m. and 2 a. m. of the following day. That these parties are often composed of persons who are totally unknown to each other, and are picked up by automobile drivers from various rooming houses and hotels in Oklahoma City; in most cases they being parties whom the auto drivers do not know. That these parties, so made up, visit the premises anywhere from 8 p. m. to 1.30 or 2 a. m. the following day. That upon one particular occasion two young men went to the Dreamland Dance Hall and took two young women whom they had never seen before, and whose names they were unable to give at the trial, to the Country Inn. That just as this party of four approached the Country Inn and was crossing the bridge, which is just immediately before one turns into the premises, they were accosted by a party, whom they did not know, who solicited them to buy intoxicating liquor, which resulted in their buying at that time four quarts of beer at $1 per bottle. That they then proceeded to the Country Inn, the boys and girls each drinking a bottle of beer, partly in the road and partly on the premises just outside the building. That the two girls and one of the boys went inside and spent some time in dancing, the girls drinking some cider in the inn. That one of the boys returned to the bridge and secured four more quarts of beer at $1 per bottle, which was being drunk by this party just outside the building and on the premises when some of the officials from the sheriff's office and county attorney's office arrived. That one of the girls of this party was somewhat intoxicated at the time the officers arrived.

"Fifth. That at another time one H. L. Griffin visited the place and asked Fred Cameron if he could purchase some beer, and that Cameron informed Griffith that he (Cameron) would ascertain. That Cameron went down towards the river and soon returned, and informed Griffin that he could purchase the beer, and told him to go down by the bridge. That Griffin went down to the bridge, where he met a man by the name of Frank Pence, from whom he purchased two quarts of beer, paying $1 a bottle.

"Sixth. That said Frank Pence was a frequenter of the Country Inn and was seen there by numerous witnesses, numerous times. That intoxicating liquors were purchased from the said Pence by different parties within the immediate vicinity of the property where the Country Inn is situated, although not upon the premises. That at a distance of about a quarter of a mile the said Frank Pence conducted a place where intoxicating liquors were sold, and that each time the officers raided the premises thus used by Pence, within a short time thereafter, the defendants Billy Gragg and Fred Cameron would appear upon the scene, stating that they heard that a raid was in progress and thought they would come down and see it.

"Seventh. That upon certain occasions between the hour of 1:30 and 2 o'clock on Monday morning following Sunday night, certain parties visited the premises known as the Country Inn and saw several soldiers and women dancing at the premises at that hour; some of them apparently being under the influence of intoxicating liquor. That upon that occasion a carload of men and women drove up to the premises, and in an endeavor to avoid their identity turned the lights off of their car and the women in the car covered up their faces.

"Eighth. The court finds: That the reputation of the Country Inn was that of a place where people congregated for the purpose of dancing at all hours of the night, and for the purpose of securing intoxicating liquor within the immediate vicinity of the premises and drinking the same within the immediate vicinity of the premises, and a place where men and women of questionable reputation as to their virtue congregated; where women who had had the reputation of prostitutes often came for the purpose of dancing and eating and mingling with the people at that place. Excepted to by defendants and exceptions allowed. John W. Hayson, Judge.

"Ninth. The court further finds that the automobile drivers engaged in the livery business frequently, the same being almost a nightly occurrence, received calls from various rooming houses and hotels of Oklahoma City from parties who desired to go to the Country Inn, and that the auto drivers would thereupon gather up such parties, consisting of men and women (whom said auto drivers either did not know or for some reason of their own refuse to reveal

their identity in court, claiming they cannot remember), and would then take these loads of men and women to the Country Inn, frequently as late as 1:30 a. m., for the purpose of dancing and congregating at such place. Upon one occasion in particular, it being undisputed in the testimony, that one of said drivers was requested to leave the premises by the defendant Gragg on account of said driver's intoxicated condition.

"Tenth. That in the automobile loads that were taken out that the parties frequently did not know each other, the women being unacquainted with the men and the men unacquainted with the women; the women simply knowing each other as Nellie and Minnke, etc., and being entirely unacquainted with the men in many cases.

"Eleventh. The court further finds: That the sheriff of Oklahoma county and his deputies and the chief of police of Oklahoma City frequently looked the premises over and searched for intoxicating liquors and at no time found intoxicating liquors upon the premises. That at such times the defendant Billy Gragg told the officers to come and look the place over at any time and they need not bother about having search warrants for that purpose.

"Twelfth. The court further finds that the premises were visited at reasonable hours by many parties of good citizens, who went there for the purpose of securing a chicken dinner, which was served at a dollar a plate, and that at such time while they were waiting to be served they availed themselves of the privileges of the dance hall, and that during such times they saw nothing of disorderly character about the premises, and saw nothing that would deter them from inviting their friends and family to accompany them to such premises.

"Thirteenth. That the said Frank Pence has pleaded guilty to several charges of violating the prohibitory law, and while serving his sentence has recently escaped and is now a fugitive from justice.

"Fourteenth. The court further finds that the defendant Fred Cameron has been convicted in the county court of Oklahoma county on two charges of violating the prohibitory law, and within the last week has begun to serve two sentences of six months each and a fine of $1,000, and is now serving said sentences.

"Fifteenth. The court infers from the testimony and therefore finds as a matter of fact, that the defendants Billy Gragg and Fred Cameron were associated together in the conduct of the Country Inn, and during a large portion of the time covered by the testimony that Fred Cameron and Frank Pence were in some manner associated together in the sale of intoxicating liquor in the vicinity of the Country Inn.

"Sixteenth. The court further finds that

under the testimony in this case that the Country Inn as conducted by the defendants is a nuisance within the provisions of both the prohibitory law and the general provisions of the statute, and should be abated.

"In making up these findings of fact as above stated, the court only takes into consideration what he deems to be competent, relevant, and material testimony in the case, and does not take into consideration any of the testimony in the case relating to Al Franklin or the Al Franklin Road House, or another place called the Fish Camp, or raids upon these premises; also the court does not consider any of the hearsay testimony or irrelevant or incompetent testimony which counsel may have permitted to go into the record without objection.

"Conclusions of Law.

"The court concludes as a matter of law that the premises known as the Country Inn should be abated as a nuisance, and hereby orders the same to be abated; that the same should be closed and placed in the hands of the sheriff with instructions to see that said premises are not reopened for any of the purposes heretofore used by the defendants in the case, aside from residential purposes of defendant Gragg and his family; and that this order should extend not only to the defendants, but to their agents, servants, and employes, all of which is to be covered by journal entry in compliance with the findings of fact and conclusions of law herein.

"The injunction awarded in this case reads: It is further ordered, adjudged, and decreed that the said defendants, Fred Cameron, Billy Gragg, and Mrs. Billy Gragg, their agents, servants, and employes, be and they are hereby perpetually enjoined from having, receiving, or storing upon said premises so described, or any part thereof, any intoxicating liquor of any kind or character for any unlawful use, and that each and every of said persons be further perpetually enjoined from permitting persons to come to, upon, or about said described premises and to resort to and congregate thereon for the purpose of drinking intoxicating liquor, and the said defendants and each of them are perpetually enjoined from further conducting and continuing the said business heretofore by the said defendants conducted in said place, and are perpetually enjoined from reopening for any of the purposes set forth and mentioned in the foregoing findings of fact, and particularly for the purposes for which the said described place and premises have been heretofor used by the defendants, and each thereof, except that the said defendants Billy Gragg and Mrs. Billy Gragg may be permitted to use the said described place and premises for residential purposes only, and the said defendants and each thereof, are perpetually enjoined from

nereafter conducting any business mentioned in the foregoing findings of fact in Oklahoma county, Okla."

To said findings of fact, conclusions of law, and awarding of the injunction awarded, defendants duly excepted and bring error to this court.

The denial of a trial by jury is assigned as error in the petition in error, but is not so assigned or argued in brief of defendants, and hence such assignment may be regarded as abandoned. However, if not regarded as abandoned, such assignment is without merit, and the court did not err in denying a trial of this case by jury.

The proceeding in the case at bar being equitable in nature, the defendants were not entitled to a jury, either as a constitutional or statutory right.

In Balch v. State ex rel. Grigsby, County Attorney, 65 Okla. 146, 164 Pac. 776, it is held:

"In an action by the state to abate a public nuisance, the defendant is not entitled to a jury trial."

This holding is in accord with the unbroken line of decisions of this court.

We are of the opinion that under the evidence in this case a most flagrant violation of the prohibitory liquor laws, as well as the general statutes of this state, is shown; that the defendants maintained a nuisance in a most aggravating form, which not only commanded the earnest condemnation of all good citizens, but also the exercise of the strong arm of the law for the effective suppression of the same, and, the great weight of the evidence being in accord with the views herein expressed, the court did not err in overruling demurrer to the evidence. The unbroken line of authority of this court is that, "where in an equity case the great weight of evidence sustains the judgment of the trial court, this court will uphold such judgment."

It is earnestly insisted by the defendants that that part of the act in question in the instant case is unconstitutional, and with this contention we cannot agree.

In E. B. Brunson et al. v. State, 8 Okla. Cr. 665, 129 Pac. 1110, the constitutionality of the law under review is upheld, and this holding finds support in the case of Nichols v. State, 8 Okla. Cr. 550, 129 Pac. 673; in Hill et al. v. State ex rel. County Attorney of Grady County, 45 Okla. 367, 145 Pac. 492, and in Balch v. State ex rel. Grigsby, County Attorney, supra.

It is contended by plaintiff:

"That the language of the statute makes it clear: If the place be declared to be a public nuisance under the purview of the law, that it has ceased its right to exist under control of any person other than the sheriff, constable, or proper officer under the authority of the court."

With this contention we cannot agree, as the law under review is for the prevention of nuisances and not for a partial confiscation of the real property in which the nuisance has its domicile.

In 20 Ruling Case Law § 94. p. 481, the general proposition is laid down as follows:

"As a general proposition it may be stated that, in those instances in which injunction lies abatable by such remedy, it is limited to unlawful acts, and is not available as a means of prevention of lawful acts. Only so much of such conduct as is unlawful can be restrained. Thus, if a merchant has unlawfully sold or used liquors in his establishment, his store cannot be shut up and abated as a place of sale of dry goods, furniture, shoes, or clothing, as the case might be; or, if he has sold liquors in his home, the court will not abate the place as a residence and turn his family out in the street."

The Kentucky Court of Appeals, in J. B. Respass et al. v. Commonwealth of Kentucky ex rel. James Breathitt. Attorney General, 131 Ky. 807, 115 S. W. 1131, 21 L. R. A. (N. S.) 836, said:

"If the use of the property is such as to require that it should be restrained by injunction, the chancellor's jurisdiction is not affected by the fact that this use may be also a criminal offense. The remedy in equity is purely preventive. The chancellor does not punish the defendant for what he has done. This is left to the criminal courts. The only thing that he determines is that the defendants must not in future use their property as to be a nuisance. The judgment does not convict them of any offense. It merely restrains them in future from so using their property as to make it a nuisance. The judgment deals merely with the use of the property in question."

In State of West Virginia ex rel. Fred O. Blue v. Baltimore & Ohio Railroad, 78 W. Va. 526, 89 S. E. 288 L. R. A. 1916F, 1001, it is held:

"When those instances in which injunction lies to prevent conduct amounting to a nuisance abatable by such remedy, it is limited to unlawful acts and is not available as a means of prevention of lawful acts. Only so much of such conduct as is unlawful can be restrained."

It therefore clearly appears that the trial court exceeded its authority when it under-

took to prevent the defendants Billy Gragg, Mrs. Billy Gragg, and, Fred Cameron from conducting any lawful business on the premises, and therefore we are of the opinion that the injunction awarded in this case should be modified to the extent to permit any lawful use of the premises in question; that the real estate in question should be turned over to the owner of said building by the sheriff of Oklahoma county, upon condition that the said owner shall not at any time, either in person or by agent or tenant or subtenant, conduct any unlawful business of any nature whatever in or upon the premises or permit any person to conduct any such unlawful business on said premises.

In consideration of said property being restored to the owner aforesaid, Billy Gragg, he is required to execute a bond with sufficient sureties in the sum of $1,000 to be paid to the state as liquidated damages in case of a violation of the injunction herein by himself, or his servants, agents, employes, or lessees as to the unlawful use of said property, said bond to be filed and approved by the clerk of the district court, and the said injunction is hereby so modified.

We have carefully considered the entire record in this case, and are of the opinion that the action of the trial court is free from error, except as to awarding that part of said injunction which restrains the use of the property for legitimate purposes.

With the injunction granted in this case modified as aforesaid, the decree of the court below is in all respects affirmed.

By the Court: It is so ordered.