FIDELITY LABORATORIES, Inc., v. OKLAHOMA CITY.

No. 30402. May 5, 1942.

*125 P. 2d 757.*

Eagin & Eagin, of Oklahoma City, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor, and J. L. Gowdy, Asst. Municipal Counselor (R. A. Billups, Sr., of counsel), all of Oklahoma City, for defendant in error.

OSBORN, J. The Fidelity Laboratories, Inc., on September 26, 1940, made application to the building superintendent of Oklahoma City for a building permit to make repairs and alterations to buildings used by it for the operation of its plant located at 1838 Southwest 13th street, in Oklahoma City. The application designated the plant as a "biological and pharmaceutical laboratory." The repairs were not to cost in excess of $1,200 and the assessed valuation of the buildings was $49,000. The permit was refused by the building superintendent and an appeal was prosecuted to the board of adjustment, where the permit was also refused. The applicant prosecuted an appeal to the district court, where the cause was heard and the action of the board of adjustment was sustained, and an order entered denying the permit, and applicant has appealed to this court.

The trial court assigned as the sole reason for denial of the permit the fact that the operation of the plant had theretofore been enjoined by the Federal District Court for the Western District of Oklahoma, and that to grant the permit would "be permitting indirectly the violation of the injunction." The city of Oklahoma City contends herein that the judgment of the federal court constitutes an estoppel as against the applicant from asserting its right to continue to do business at the present location of the plant.

It is conceded that the plant of the applicant is located within the U-1 or residence zone of Oklahoma City and that the use of the property by applicant constitutes what is known as "a non-conforming use," but that said plant was in operation long prior to the date of enactment of the zoning ordinances of Oklahoma City. Applicant contends that its right to a permit is fixed by the following provisions of the zoning ordinances:

"(g) A 'non-conforming use' is one that does not comply with the regulations of the use district in which it is situated.

"25-47. Non-Conforming Uses. A non-conforming use existing at the time of the passage of this Ordinance may be continued, except as otherwise provided in this section. A non-conforming use shall not be extended, but the extension of a use of a portion of a building which portion was arranged or designed for such non-conforming use at the time of the passage of this ordinance shall not be deemed the extension of a non-conforming use. A building arranged, designed or devoted to a non-conforming use at the time of the passage of this ordinance shall not be repaired, reconstructed or structurally altered to an extent exceeding an aggregate cost, during any ten-year period, (of) sixty per cent of the assessed value of the building unless the use of said building is changed to a conforming use. . . ."

It thus appears that insofar as the ordinance is concerned, plaintiff is entitled to a permit to make the repairs, since it is conceded that the cost thereof will be considerably less than the maximum fixed by the terms of the ordinance. Therefore, we must determine whether such right is foreclosed by the

injunction of the federal court which is conceded to be in full force and effect.

On August 25, 1939, the Exchange Avenue Baptist Church, which owned property adjacent to the plant of the applicant, filed a suit for damages and an application for injunction in the district court of Oklahoma County, wherein it was alleged that applicant was maintaining a nuisance on its premises, which nuisance arose from the keeping and slaughtering of several hundred head of hogs creating noisome odors and sounds. It appears that it was necessary to keep the hogs upon the premises for the purpose of manufacturing hog cholera virus and serum. On August 3, 1939, applicant herein filed an action in the Federal Court for the Western District of Oklahoma against the city of Oklahoma City, being case No. 249-Civil in that court, wherein it was sought to enjoin the city from enforcing city ordinance No. 5091, which ordinance was enacted on June 6, 1939, and provided that "it shall be unlawful and an offense for any person to rear or keep any swine within the city of Oklahoma City. . . ." The case filed by the church was removed to the federal court and docketed as case No. 262-Civil. The two cases were consolidated for trial. On March 21, 1940, said court promulgated a written opinion in which the issues in the respective actions were defined and determined. It was found that the principal issue involved in the action instituted by the applicant herein related to the constitutionality of ordinance No. 5091, supra. The court determined that the ordinance was constitutional and constituted a valid exercise of the power of the city. With reference to the issue raised by the church to the effect that the operation of the plant constituted a nuisance, the court found:

"The evidence in this case discloses that these laboratories, in which serum and virus are manufactured, require the collection of hogs in great numbers and their maintenance at the plant; that these hogs are treated and bled, that is, that blood is taken daily in small quantities from the tails and throats of the hogs; that this operation is painful to the hogs which causes continual squealing; that odors emanate from this plant which not only are objectionable but repulsive to the residents of that immediate neighborhood."

The court concluded as follows:

"This court, therefore, without difficulty, arrives at the conclusion that in the enactment of the ordinance in question, the city acted within its constitutional power as delegated to it by the laws of the state and that, therefore, the ordinance is a valid ordinance.

"In cause number 262, the issues are controlled by the above opinion in cause number 249. The ordinance is a valid ordinance, and, under the evidence in this case, the laboratories' plant clearly constitute a nuisance. The action to enjoin the operation of said plant as a nuisance was a proper action by the plaintiff church.

"The injunctive relief sought by the Laboratories corporation will be denied and the cause dismissed at cost of plaintiff. An injunction will issue enjoining the operation of said plant."

It is not disputed that, following the issuance of the injunction, the hogs were removed from the premises. It further appears that the applicant has not discontinued the operation of its business, but that it has discontinued the manufacture of "anti-cholera serum and hog cholera virus." Testimony was offered by the applicant, and not disputed by the city, that the plant had continued processing blood from animals which blood had been brought from a plant at Okmulgee for making hog cholera virus, and that applicant had made insecticides, fly sprays, and remedies for livestock.

W. B. Swain, vice president of applicant corporation, testified as follows:

"Q. Since the injunction then you have not increased or made any other use of that property other than to process the blood of animals that was brought over from Okmulgee and you continued to manufacture fly spray, those are the only two things you have done since you have been enjoined from operating your plant, is that right? A. Yes; we have

not added any new line. Q. What new line do you want to add to your plant out there? A. We don't especially want to add any new line; we want to change the use of our laboratories to make them practical without the presence of the hogs. Q. When you change your laboratories, what is it you want to manufacture out there? A. We want to continue making our remedies, vaccines and things of that kind which we have always done."

The witness testified further that the plant was valued at approximately $50,-000 and that it was expected that in the manufacture of fly spray, bacterine, and other remedies and medicines for the treatment of diseases of livestock a reasonable profit could be made. No contention is made herein that the manufacture of any of said articles will constitute a nuisance.

The city of Oklahoma City contends that the issue before the federal court was the right of the applicant to operate its plant on the premises involved therein, and that the injunction had the effect of prohibiting the further operation of the plant, whereas the applicant contends that said injunction only enjoined the operation of the plant "as a nuisance."

We are committed to the rule in this jurisdiction that where a lawful business is conducted in such manner as to constitute a private nuisance, such nuisance may be enjoined and abated, but the injunction ordinarily should be limited not to the business itself, but to the usage that creates the nuisance, leaving the right to carry on the business in a proper and lawful manner, and that it is only where such business cannot be conducted in any manner at the place where situated without constituting a substantial injury to adjoining property owners that the injunction shall absolutely prohibit the operation of such business. Kenyon v. Edmundson, 80 Okla. 3, 193 P. 739; Jordan v. Nesmith, 132 Okla. 26, 269 P. 1096; Key v. State, 101 Okla. 211, 224 P. 549; Gragg v. State, 73 Okla. 132, 175 P. 201. See 20 R. C. L., sec. 94, p. 482; Wilson v. Evans Hotel Co., 188 Ga. 498, 4 S. E. 2d 155, 124 A. L. R. 373; National Ref. Co. v. E. A. Batte, 135 Miss. 819, 100 So. 388, 35 A. L. R. 91. We must assume that the federal court had this rule in mind at the time of the issuance of the injunction. We have outlined in some detail the issues in the consolidated cases tried by the federal court, and we are driven to the conclusion that said court did not intend to enjoin all of the operations of the applicant at its plant, but only such operations as constituted a nuisance to adjacent property owners, or, in other words, that said court intended to prohibit the operation of the plant as a nuisance. No contention is made that applicant has violated, or intends to violate, the injunction.

Accordingly, we conclude that the trial court erred in denying the application to repair the buildings.

The judgment of the trial court is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. DAVISON, J., absent.