## VAN HOOZER v. BEST et al.

No. 33727.   Feb. 20, 1951.

*227 P. 2d 1019.*

J. W. Tyree, Lawton, for plaintiff in error.

Walter Hubbell, Walters, for defendants in error.

LUTTRELL, V.C.J. This action was brought by the plaintiff, Fred Van Hoozer, against Ernest Best, administrator of the estate of Albert Jackson Smith, deceased, to quiet title to certain lots in Waldman addition to the city of Lawton. The petition was in the ordinary form, and the administrator answered by a general denial. The heirs of Smith intervened, and in their pleadings, in addition to a general denial, alleged undue influence on the part of Van Hoozer; that Smith was incompetent at the time the deed was made, and that Van Hoozer had reconveyed the property to Smith. The case was tried to the court as one of equitable cognizance, and at the conclusion of all the evidence, the trial court rendered judgment for the heirs, and denied relief to Van Hoozer. Thereafter, Van Hoozer filed a motion for new trial, and later filed another motion for new trial on the ground of newly discovered evidence, which were by the court overruled. Van Hoozer appeals.

From the evidence it appears that the deed in question was executed by Smith on May 18, 1942, and delivered to John J. Schott and his wife, who operated a real estate office in the city of Lawton, with instructions that it was to be delivered to Van Hoozer upon Smith's death. Smith died intestate in October, 1944, leaving surviving him a divorced wife and several children, interveners in the case. The divorced wife later withdrew her claim. In August, 1944, he instructed Mrs. Schott, whose husband had theretofore died, and who continued to operate the real estate office, to deliver the deed to Van Hoozer. So far as the record shows Van Hoozer paid no consideration for the deed. The property was the home of Smith and was apparently the only property he owned.

The evidence further shows that at the time he made the deed Smith was some 72 years of age, and that, as the trial court found, while not mentally incompetent on that date, he was in bad health and his mind was unsettled; that he had theretofore made several deeds conveying the land in controversy to various persons, the last one being to one of his daughters, and that he had recovered and destroyed these various deeds. Two witnesses testified that he offered to deed the property to them and they refused to accept it. Mrs. Schott testified that when he came to their office he destroyed the deed which he had received back from his daughter, and insisted on making the deed to Van Hoozer, although her husband tried to dissuade him, and that at that time he told her husband to hold the deed in escrow and deliver it to Van Hoozer upon Smith's death. She further testified that when Smith directed her to deliver the deed to Van Hoozer, he and his wife executed and left with her a deed reconveying the property to Smith, so that if Smith changed his mind about giving Van Hoozer the property he could have it back; that thereupon she delivered Smith's deed to Van Hoozer, and Van Hoozer recorded it and returned it to her, and that she held both deeds in the office and had them in her possession at the time the case was tried. Smith retained possession and control of the property during his lifetime, and in May, 1944, made a five year lease upon the property to other parties.

The trial court found that the deed was by Smith delivered to Mr. and Mrs. Schott without instructions to deliver it to Van Hoozer, and defendant argues that this finding was erroneous. While the trial court so found, and

further found that when Smith directed delivery of the deed to Van Hoozer he was incompetent, careful consideration of the record and briefs convinces us that the decisive question presented for determination is whether, when Smith made the deed to Van Hoozer and left it with his agents, the Schotts, without any specific reservation or control over its disposition, he intended to and did forever part with all control over the deed, and divested himself, or intended to divest himself, of the right or power to retake or repossess the deed in case he changed his mind. If that was his intention the title vested in Van Hoozer on the date the deed was left with the Schotts. On the other hand, if he intended to part with control over the deed only at his death, the instrument was merely an attempt to make a will and could not be enforced. This is the established rule in this state.

In Maynard v. Hustead, 185 Okla. 20, 90 P. 2d 30, we said:

"It is now established in this jurisdiction that when the owner of land executes a deed during his lifetime and delivers the same to a third party with instructions to deliver the deed to the grantee upon his death, intending at the time of the delivery to forever part with all lawful right and power to retake or repossess the deed, or to thereafter control it in any manner, the delivery thus made is sufficient to operate as a valid conveyance during the lifetime of the grantor, with the right to possession postponed until the grantor's death and may be enforced after his death. But, on the other hand, if the grantor merely intends to part with such control over the deed at his death, the instrument is merely a will, and will not be enforceable unless executed in the form and manner required of wills."

Numerous cases are cited in support of this statement.

In Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237, 52 A.L.R. 1213, we said:

"To be effective after the grantor's death, the deed must have been executed by the grantor in the form and manner required by law for the execution of deeds, and in the lifetime of the grantor he, the said grantor, must have caused such deed and the title to such real estate to have passed completely beyond his power and control, and have caused the title to same to pass into the control of the grantee, although the document itself may have been reposed in the hands of some third party, and a life estate reserved to the grantor."

In the light of this rule examination of the evidence in the instant case negatives the idea that it was the intention of Smith to vest title to the property in Van Hoozer at the time the deed was left with the Schotts, but clearly discloses that he understood that he retained control over the deed, and title to the property, until his death, and that this understanding was known to and acquiesced in both by the Schotts and Van Hoozer. The Schotts were the agents and long time business friends of Smith, and were familiar with his unsettled or unbalanced state of mind, and his penchant or obsession to deed his property to others. The testimony of Mrs. Schott shows beyond question that if at any time prior to his death Smith had demanded the return of his deed, or had demanded the reconveyance from Van Hoozer, she would have unhesitatingly delivered them to him, since her testimony establishes that she was holding them, and understood that she was holding them, subject to his control and direction. It is also apparent that Van Hoozer understood this, since he, when the deed was delivered to him to be recorded, reconveyed the property to Smith, and left such reconveyance with Mrs. Schott to be delivered to Smith if Smith desired. While in her last deposition, taken in October, 1947, Mrs. Schott testified that when she advised Smith that she had this deed from Van Hoozer to him, he told her that he wished Van Hoozer to have the property, in a previous deposition, taken in March, 1946, and attached to plaintiff's motion for new trial, she testified that when she told Smith that she had taken the recon-

veyance from Van Hoozer he was happy to know that it was all fixed up, and told her to hold the deed, that he might call for it.

All this evidence irresistibly leads to the conclusion that all the parties considered that Smith was still the owner of the land and had the right to control the disposition of the deed in the hands of Mrs. Schott, and that had he demanded a return of that deed, or the delivery to him of the reconveyance from Van Hoozer, his demands would have been complied with without hesitation. Van Hoozer was present at the trial, but did not testify. The record shows that he was a good neighbor and friend of Smith, but it is barren of any evidence which reflects any extraordinary kindness or attention on his part which would actuate Smith in making him a present of the property. The making of the deed to him seems to have been just one more of a series of transactions in which Smith had indulged during the latter part of his life, attributable to his ill health and unbalanced or unsettled frame of mind, and in none of which he had placed the deeds beyond his control.

Defendants cite and rely upon the case of McCaw v. Hartman, 190 Okla. 264, 122 P. 2d 999, but examination of the opinion in that case discloses no testimony similar to that in the instant case, and we think the peculiar facts shown by the testimony in this case renders it inapplicable.

While the trial court held that the deed was left with the Schotts without any special instruction, and that at the time the Schotts were directed to deliver it to Van Hoozer, Smith was mentally incompetent, we have many times held that the judgment of the trial court, if correct, will be sustained, although the trial court gives a wrong reason for its judgment or considers immaterial issues. See Chaney v. Reddin, 201 Okla. 264, 205 P. 2d 310, and authorities therein cited.

Plaintiff also contends that the trial court erred in overruling his motion for new trial on the ground of newly discovered evidence, to which he attached the first deposition made by Mrs. Schott. This deposition had not been transcribed by the notary public taking it prior to the conclusion of the trial. The notary appeared at the trial and testified that she was unable to find her notes so that the first deposition could be transcribed, but later she found them and transcribed them. We have examined this deposition, and conclude that the trial court did not err in denying the motion. While the deposition does establish, as contended by plaintiff, that Mrs. Schott therein testified that the deed was originally delivered to their office with instructions to be delivered to Van Hoozer at Smith's death, it also strongly evidences the fact that Smith did not intend to part with his title at that time, or to relinquish control over the deed, and that this was well understood by all parties to the transaction.

Affirmed.

ARNOLD, C.J., and CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. WELCH and HALLEY, JJ., dissent.

HALLEY, J. (dissenting). The majority opinion is based upon the rule which is extant in this state—and with which I find no fault—that if the grantor, at the time that he executed the deed and placed it in the hands of a third person to hold until his death, did not intend to forever part with all lawful right and power to retake and repossess the deed, or to thereafter control it in any manner, such a deed would be only a testamentary disposition of the property, and since it was not made according to the laws for making a will, would be invalid. The converse is also true: that if, at the time the grantor executed the deed and turned it over to the third party, he fully intended to part with all control over the deed and did not have the power or right to repossess the deed, it would be a valid conveyance. There is no dispute as to what the law is in

Oklahoma; it is its application to the facts in a particular case which causes the trouble. A question of a similar nature has been considered in Johnson v. Craig, 37 Okla. 378, 130 P. 581; Shaffer v. Smith, 53 Okla. 352, 156 P. 1188; Wright v. Anstine, 96 Okla. 162, 220 P. 928; Kay v. Walling, 98 Okla. 258, 225 P. 384; Hall v. Dollarhide, 116 Okla. 180, 244 P. 813; Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237, 52 A.L.R. 1213; Loosen, Adm'r, v. Stangl, 163 Okla. 231, 22 P. 2d 364; Anderson v. Mauk, 179 Okla. 649, 67 P. 2d 429; McCaw v. Hartman, 190 Okla. 264, 122 P. 2d 999; and Maynard v. Hustead, 185 Okla. 20, 90 P. 2d 30.

The evidence is overwhelming that the grantor indicated at all times after he signed the deed that he intended his friend Van Hoozer to have this property. Every time that anyone asked him about this property, he said that he wanted Van Hoozer to have it. I submit that the facts here are stronger for a grant in praesenti than existed in McCaw v. Hartman or in Maynard v. Hustead, supra. In both instances this court approved a deed made and placed in the hands of a third person.

The deed in this case was actually delivered to Van Hoozer before the death of Smith, the grantor, at his (Smith's) direction. In view of the fact that Smith, the grantor, insisted upon the delivery of the deed to Van Hoozer during his (Smith's) lifetime, and would not be satisfied until the deed was delivered to Van Hoozer, creates a much stronger case for the plaintiff than those considered in the aforementioned cases; and the case resolves itself into one as to whether or not Smith had the mental capacity to give a deed at the time it was executed and delivered. There is no evidence in the record that Smith was in such mental condition that he did not know the significance of the warranty deed which he had made, and which he had at all times insisted should go to Van Hoozer. This court has held in numerous cases that the test of the ability to make a deed is that the grantor should have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting at the time of execution and delivery. Scott v. Scott, 131 Okla. 144, 268 P. 245; Miller v. Folsom, 49 Okla. 74, 149 P. 1185; Tiger v. Lozier, 124 Okla. 260, 256 P. 727; Bumpass v. Stone, 190 Okla. 488, 125 P. 2d 755; Antle v. Hartman, 193 Okla. 524, 145 P. 2d 756; Tate v. Murphy, 202 Okla. 671, 217 P. 2d 177. There is no testimony in this record which shows that the grantor in the deed did not realize what he was doing when he executed the deed; and it is only the testimony of one of the lawyers in the case that indicates there is any question about his mental capacity at the time of delivery, and such testimony is not entitled to a great deal of weight. The testimony of the witness, in my opinion, shows conclusively that Smith was aware of what he was doing. We said in Scott v. Scott, supra, when speaking of a grantor in a deed, that he may be old; he may be enfeebled by disease; he may be erratic, irritable and changeable in his views; he even may be irrational upon some topics; but in the absence of fraud, he may still execute a valid deed. It makes no difference here what the escrow holder thought her duty was, nor does it make any difference that the plaintiff executed a deed back to Smith at her insistence. Our chief concern is with what Smith desired.

I call attention again to the fact that Smith, every time he opened his mouth in regard to the disposition of his property after executing this deed, insisted that Van Hoozer be the recipient thereof. The majority opinion infringes upon the right of the individual to dispose of his property according to his own desires. This is one case that should be re-tried.

I dissent.