## FISHER v. PUGH et al.
### No. 35554.

Supreme Court of Oklahoma.

June 23, 1953.

Rehearing Denied Sept. 22, 1953.

Abernathy & Abernathy, Shawnee, for plaintiff in error.

Sam L. Wilhite, Anadarko, for defendants in error.

CORN, Justice.

John D. Pugh, resident of Anadarko, Oklahoma, died intestate February 28, 1950. On November 30, 1948, he executed warranty deeds to various tracts of real property located in Caddo and Grady counties, and a bill of sale to certain city property located in Anadarko, naming as individual grantees to the different tracts his six adult children. December 5, 1948, he married Ruby S. Kenison who at the time was residing temporarily in Shawnee, Oklahoma, with her daughter by a previous marriage.

Following their marriage the parties resided in his residence in Anadarko, Oklaho-

ma, until his illness which began early in February, 1950, and terminated by his death, February 28, 1950. March 2, 1950, five of the named grantees placed their deeds of record, and the other was recorded March 6, 1950, although one deed conveying land in Grady county was not recorded there until May 15, 1950. The bill of sale to the town property was not filed until June 9, 1950. Following decedent's death defendants petitioned for appointment of an attorney as administrator. This party filed refusal to act and the present administrator, a lifelong friend of the widow, was appointed special administrator, thereafter qualifying as administrator of the estate.

In October, 1950, the administrator brought this action against the named defendants to cancel the deeds, and the bill of sale, executed by decedent. The petition alleged that subsequent to decedent's death defendants caused the various instruments to be placed of record; that none of these instruments were executed or delivered by decedent with the intent same should take effect or divest him of title; that he retained custody and control during his lifetime and exercised all the powers of ownership in fee simple over the property until his death, by reason of which these conveyances were void and at no time divested decedent of title. Further, the widow had no knowledge of the purported execution of such instruments during his lifetime, and only learned thereof upon recordation following his death. Plaintiff asked judgment cancelling all conveyances or assignments of the property affected, and that defendants or parties claiming under them be declared trustees for benefit of decedent's heirs at law, including Ruby S. Pugh, for accounting and other equitable relief.

Defendants' answer admitted the administrator's right to act and that they were the sole surviving children of decedent, who had married Ruby S. Pugh as alleged, but denied all other allegations. They further answered that decedent had executed and delivered the instruments in question during his lifetime and by reason thereof his estate had no interest in the property described.

Plaintiff replied by general denial, and also specifically denied the instruments referred to had been executed or delivered by decedent during his lifetime with the intention to divest himself of title and pass same to the named grantees or assignees.

Plaintiff's evidence was that deceased was a responsible business man of wide experience. At all times, including the years 1948–1949, and up to the time of last illness he actively managed his affairs. During 1948–1949, he returned the income from the properties in question and paid income tax thereon, claiming deductions in his return for losses and depreciation upon the improvements. The property at all times was assessed in his name in the counties where same was located, and decedent paid the taxes thereon. The evidence also reflected that he had purchased building materials and supplies for repairs on various pieces of this property, and had paid repair bills upon the property after the date of execution of the instruments. He also had regularly paid the insurance premiums upon the policies covering this property, and it was shown that he owned no other real property other than that described in the instruments plaintiff sought to cancel.

Another witness for plaintiff was decedent's fellow officer in the savings loan association, of which deceased had been the active manager, who had known and worked with deceased for many years. From 1942–1950 there had been 21 loan certificates issued to deceased and various of his children. These certificates had a value in excess of $24,500 and were issued in joint tenancy with right of survivorship. One certificate had been issued to deceased and Ruby S. Pugh as joint tenants with right of survivorship. This witness had no knowledge of decedent ever having conveyed anything to his children. The witness knew Dail Pugh, who also was employed by the loan association. Some individuals kept private lock boxes in the association vault, but the witness did not recall Dail Pugh having a lock box. John D. Pugh kept a box in the vault, and the vault is accessible to persons working for the association.

The tenants who had rented or leased the different properties for varying periods, up to and including the time of decedent's death, testified as witnesses for plaintiff. Each tenant testified to having dealt only with decedent, and at no time during the course of their dealings had heard decedent make any statement indicating that he had conveyed any of his property to the defendants.

Decedent's wife, Ruby S. Pugh, was a witness in plaintiff's behalf. She testified concerning the marriage, their residence in decedent's home until his death, and her continued occupancy of the premises. She identified genuine exhibits of deceased's handwriting which were used as a basis for comparison in an effort to establish that a tracing made by Mrs. Pugh was an authentic reproduction of a letter purportedly written by deceased, wherein it was stated that he had not deeded anything to his children. The witness identified Exhibits 53-54-55. The first of these was a waiver by decedent of any interest in alimony she received from her former husband; the second was an envelope, postmarked May 31, 1949, which contained the waiver, together with Exhibit 55, which was the tracing she allegedly made of decedent's original letter. The witness detailed the method by which the tracing was accomplished, and stated that she realized the instrument was an important letter and about two months after receipt of same she made the tracing and then returned the original to her husband. She also testified the original letter had remained in her possession at all times from receipt thereof until she voluntarily returned the letter to her husband. These exhibits were admitted in evidence over defendants' objections. The importance of this letter to plaintiff's case lies in the fact that some six months following execution of the deeds and bill of sale decedent purportedly made this written statement that he had deeded nothing over to his children.

Mrs. Pugh's daughter also was a witness for plaintiff. She gave testimony tending to establish that deceased, in this witness' presence, had discussed with her mother the matter of his executing a deed in favor of the witness, covering any interest he might have in her mother's property; that he stated in her presence that he wanted no interest in the alimony his wife received from her former husband, or in her property; that on numerous occasions decedent had declared that her mother was to have a child's part in all his property. She also testified that her mother showed her the letters (Exhibits 53-55) on the day they were received at witness' residence in Shawnee, Oklahoma, where her mother was visiting at the time. And, she further testified that the original letter, from which Mrs. Pugh allegedly made the tracing, remained in witness' possession for some two months following her mother's return home to Anadarko.

A handwriting expert testified for plaintiff, and after the defendants offered evidence by another expert, again took the witness stand to give rebuttal testimony. This witness testified it was his opinion that Exhibit 55 was a tracing of an original letter written by decedent.

Opposed to such evidence defendants offered the testimony of another handwriting expert, who testified that in his opinion this letter was a free hand writing rather than a tracing from an original instrument. However, he further testified the date (May 31, 1949) on the exhibit was darker than the writing. On cross examination this witness admitted he could not form a satisfactory conclusion as to whether the exhibit was a tracing without having the original to check against.

Plaintiff's expert was recalled in rebuttal, and testified the exhibit was definitely a tracing from an original, and not a forgery, detailing his reasons for such conclusions.

The due execution of these deeds was not questioned, and defendants' evidence was directed toward establishing delivery of the deeds and bill of sale. One son (Haskell Pugh) identified the original instruments, and testified decedent was in his home December 4, 1948, at which time the deeds came into his possession. The following day he visited his sister's home in Anadarko and at that time, in his father's presence, delivered the instruments to Dail Pugh. This was just shortly before de-

cedent's wedding. All of this testimony was admitted over plaintiff's objections. The witness thereafter received his deed back from Dail Pugh by mail on February 11, 1951. The fact of such receipt of the deed was corroborated by a disinterested witness. The other defendants testified concerning the time and manner in which each received his or her particular deed.

Dail Pugh testified he came into possession of these deeds on December 5, 1948, receiving same from Haskell Pugh; thereafter he had sole possession of these instruments and kept them in a lock box in the loan association vault until mailing each of the others his or her particular instrument prior to his father's death.

Defendants introduced in evidence as exhibits several work sheets or written memoranda in decedent's handwriting. Such memoranda reflects that decedent had set his own appraisal upon each parcel of property and had considered an equitable division of his property among his children, having set down the particular tract or parcel in each child's name, together with a figure representing the valuation of such property. The deeds and bill of sale executed to each child reflect that same followed the plan of equitable distribution outlined in the memoranda.

An insurance man, who had occasion to discuss matters concerning decedent's property, testified that early in 1949 decedent stated to him that he did not need a will because he already had made deeds to his property. Another witness for defendants was a tenant in one of the properties. His testimony was that decedent tried to sell him the property he was renting in 1948, and stated that if witness did not buy the property he intended to deed it to his children.

After hearing all the evidence the trial court made written findings of fact, in substance as follows. In contemplation of his marriage decedent wrote and executed the instruments, conveying his property to his children in approximately equal shares. These instruments came into possession of Haskell Pugh during a visit with decedent, and on December 5, 1948, were delivered to Dail Pugh in decedent's presence, who thereafter kept them in the vault to which decedent had access. Decedent knew Dail Pugh had possession of these instruments at all times after delivery, but made no attempt to reclaim the instruments or title to the properties conveyed thereby. Decedent was married following delivery of the deeds, and during the remainder of his lifetime had the general control and management of these properties and received the revenue therefrom. Decedent became ill and the following day Dail Pugh took the instruments from his lock box and mailed them to the named grantees, and same were recorded immediately following decedent's death. Decedent intended to convey his property to his children and exclude his widow from inheritance, but it also was his intention to retain possession of the property during his lifetime and enjoy the revenue therefrom.

The trial court found as a matter of law that decedent wrote, signed and delivered these instruments during his lifetime, and that title and ownership of the property involved vested in defendants at the time (December 5, 1948) Dail Pugh came into possession thereof. Upon such findings and conclusions of law judgment was rendered for defendants.

Plaintiff presents two propositions in seeking reversal of this judgment. It is urged the finding that decedent executed and delivered the questioned instruments during his lifetime with the intention of passing title in praesenti is contrary to the clear weight of the evidence. The argument is that delivery of a deed is essential to pass title, and the rule in this jurisdiction makes the grantor's intent the paramount consideration upon this question. 26 C.J.S., Deeds, § 40; Johndrow v. Johndrow, 199 Okl. 363, 186 P.2d 325; McKeever v. Parker, 204 Okl. 1, 226 P.2d 425. And, where a question arises whether, in absence of an express intention, there was a delivery in praesenti such as to pass title, the grantor's intention must be inferred from words and conduct. Van Hoozer v. Best, 204 Okl. 149, 227 P.2d 1019.

Plaintiff presents an extensive argument concerning established rules for determining the validity of instruments, the validity

of which is in dispute, and urges that the presumption of delivery disappears where the facts show non-delivery, or circumstances inconsistent with the presumption. Plaintiff's reasoning may be analyzed as follows. In absence of proof the rule is that delivery will be presumed to have taken place at the time of execution. But, since defendants' evidence fixed a date when it was contended delivery took place this presumption was destroyed. Plaintiff then relies upon the rule laid down in Scott Ex'r v. Scott, 111 Okl. 96, 238 P. 468, syllabus 4 of which states.

"In the absence of proof, there is a presumption that a deed is delivered, if at all, at the time of its execution; but, where it appears from the evidence that a deed was not delivered at the time of its execution, and such deed is subsequently filed for record, the presumption is that it was delivered at the time it was filed for record."

From this position plaintiff then concludes that there comes into play a second presumption, to wit, that the deed was delivered at the time same was recorded. Since recordation occurred subsequent to the grantee's death plaintiff reaches the conclusion that the burden of proving decedent's delivery with intent to divest himself of title shifted to defendants, whose evidence failed to establish such delivery.

At this point plaintiff asserts that the alleged facts of decedent's delivery of these instruments were impeached by: (1) the opening statement of defendants' counsel; (2) the testimony of Haskell and Dail Pugh concerning the alleged delivery; (3) decedent's continued control and management of the property during his lifetime; (4) that there was evidence Dail Pugh did not have a lock box, the inference being that he could not have retained possession of the instruments as testified to; (5) that the "traced" letter, dated May 31, 1949, conclusively demonstrated that as of that date decedent did not consider that he had divested himself of title to these properties. Summed up, the complaint is that defendants offered no evidence of delivery of these instruments other than possession by the grantees. Having reviewed this record carefully we are unable to accept the interpretation placed upon different features of the evidence by plaintiff.

It is true that in his opening statement defendants' counsel mentioned December 4, 1948, as the day upon which Dail Pugh came into possession of the deeds. This amounted to nothing more than an inconsistent statement of an essential fact upon which, in view of the other evidence, the court could still find for defendants. Such statement was not a solemn admission of a material fact, and was not sufficient to remove the question of delivery from controversy or provide a bar to recovery. See 53 Am.Jur., Trial, § 371–372; Patterson v. Morgan, 53 Okl. 95, 155 P. 694.

The testimony of Haskell and Dail Pugh fixed December 5, 1948, as the date the instruments were delivered to Dail Pugh, and that such delivery was accomplished in decedent's presence. Decedent admittedly was an alert and active business man. Under such circumstances it is inconceivable to assume, as stated by plaintiff, that he neither knew, saw, or consented to what was being done, and had neither knowledge nor understanding of the effect of such a transaction. It is true there was no other direct evidence upon this matter. However, there was absolutely no evidence that such occurrence did not take place.

Plaintiff strenuously urges the fact of decedent's continued control of this property, coupled with the alleged lack of any other evidence of delivery (aside from grantee's possession) as sufficient to require the trial court to find that there was no delivery effectual to pass title, under the rule announced in Maynard v. Taylor, 185 Okl. 268, 91 P.2d 649. This argument is effectively foreclosed in our recent decisions of In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933, and McKeever v. Parker, supra. In both cases we explicitly pointed out that the fact the grantor continued in control and management of the property conveyed during his lifetime did not destroy the presumption of delivery arising from due execution and recordation of the

deed. We perceive no reason for enunciating a different rule where the parties bear the relationship of parent and child rather than that of husband and wife.

Plaintiff stresses the testimony of the witness English, an officer of the association (founded by decedent) where Dail Pugh was employed, that he "did not recall" Dail Pugh having a lock box in the vault. With this testimony plaintiff couples the evidence that decedent had a lock box, and that upon one occasion same was opened by Haskell or Dail Pugh. Plaintiff then construes the evidence as establishing that Dail had no lock box and thus could not have been in possession of the deeds as testified to and boldly suggests that the fact the defendants once obtained access to decedent's lock box affords a sound explanation as to the manner of Dail Pugh's acquisition of these instruments prior to the time same were mailed to the grantees. Such argument is unjustified under the record.

One other point of plaintiff's argument relative to the contention that decedent made no delivery of the deeds with the intent of divesting himself of title in praesenti justifies our attention. This is the significance attached to the admittedly "traced" copy of a purported letter written by decedent some months after execution of these instruments. The circumstances concerning the production of this letter were sufficiently clouded as to cause the trial court not to give particular credence to the instrument. The expert testimony concerning its authenticity was in conflict, but there was testimony sufficient to justify the trial court in concluding that this letter had been written at a time other than the date appearing thereon. Although plaintiff seeks to interpret this evidence as indicating that the deeds were not executed until long after decedent's marriage, and subsequent to the date of the "traced" letter, we are unable to find any basis in the evidence for accepting such conclusion.

■ Without further extending the discussion of the evidence, or analysis and comparison of the numerous decisions cited and relied upon, we deem it sufficient to point out the only issue was whether decedent delivered these instruments with the intention of divesting himself of title. It is a settled rule that where a grantee is in possession of a deed the presumption in favor of delivery can be rebutted only by clear, positive evidence to the contrary. Plaintiff argues at length that the presumption of delivery was destroyed by the testimony of Haskell and Dail Pugh. This overlooks the fact that this same evidence was sufficient to establish delivery. The only evidence upon which plaintiff relies to establish non-delivery is the decedent's control and management of the property, coupled with the purported statement in the "traced" letter to the effect that he had not deeded away his property. Under this record we are impelled to accept the conclusion reached by the trial court, who by his judgment concluded as a matter of law that plaintiff's evidence was not of the clear and positive character required to show non-delivery.

Under the facts and circumstances reflected herein the trial court correctly found that there had been valid delivery of these instruments by the grantor to the grantees. Such finding is not against the clear weight of the evidence.

■ As further grounds for reversal of this judgment the following proposition is submitted.

"In a civil action instituted by the administrator of the estate of a decedent against grantees of deeds executed by the deceased such grantees are incompetent to testify in their own behalf either as to delivery of a deed or possession of a deed where same are for all practical purposes equivalent to testimony as to a transaction with the decedent."

Considering these contentions we again call attention to the following evidence. Haskell Pugh testified he came into possession of these instruments and memoranda in decedent's handwriting, on December 4, 1948; on the day following he took same to his sister's home in Anadarko where, in the presence of decedent and his sister, he delivered them to Dail Pugh. Dail Pugh testified he received the deeds

from Haskell, and that decedent was present in the sister's home when Haskell gave him these deeds.

This testimony was admitted over the plaintiff's objections as to its competency upon the ground it showed a transaction with the deceased, and thus was violative of the inhibition contained in 12 O.S.1951 § 384. Upon this basis plaintiff presents an extensive argument, based upon decisions from other jurisdictions, as well as an able discussion of the numerous decisions from this court wherein we have considered numerous phases of the question.

For the purpose of decision herein we deem it unnecessary to discuss our prior holdings upon such question, for the reason that in our opinion the question sought to be raised cannot be controlling. The plaintiff concedes that the only issue herein is whether decedent delivered these instruments with the present intention of divesting himself of title. The plaintiff recognizes the rule that possession of a deed by the grantee raises a presumption of delivery at the time of execution, but contends that this presumption was destroyed by defendants' evidence showing delivery at a time other than the date of execution. However, plaintiff likewise predicates the claim of reversible error upon the admission of the very evidence which it is contended was prejudicially admitted.

Thus the situation may be defined in the following manner. If the objectionable testimony could be relied upon as sufficient to destroy the presumption of delivery of the deeds to defendants at the time of execution thereof then the trial court properly could consider this evidence in reaching his determination as to whether delivery had been made. If the testimony was incompetent it was then for the trial court to determine as a matter of law whether plaintiff had discharged the burden of rebutting the presumption of delivery. Most certainly it cannot be seriously urged by plaintiff that he is entitled to have such testimony considered for one purpose, but that the admission thereof must be considered erroneous for any other purpose. If the testimony objected to is to be held erroneous for one purpose, then it cannot be considered for any other purpose. Under no circumstances can plaintiff rely upon certain testimony in an effort to establish the issue in his case and then, in the same breath assert prejudicial error based upon the selfsame evidence. Having reviewed this record we are convinced there was a failure to rebut the presumption of delivery of the questioned instruments under either hypothesis assumed by plaintiff.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, O'NEAL and BLACKBIRD, JJ., concur.

DAVISON and WILLIAMS, JJ., dissent.