## DERDYN et ux. v. LOW et al.

No. 14223—Opinion Filed Oct. 30, 1923.

Rehearing Denied Dec. 4, 1923.

### 1. Fraud—"Confidential Relation."

A confidential relation arises by reason of kinship between the parties, or professional, business, or social relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in the defendant which largely results in the substitution of the will of the defendant for that of the plaintiff in the material matters involved in the transaction.

### 2. Cancellation of Instruments—Undue Influence—Proof.

If the plaintiff relies on undue influence as flowing from a confidential relation for the cancellation of a conveyance, the plaintiff must show by sufficient proof that the confidence reposed in the defendant lulled the plaintiff into a sense of security in dealing with the defendant concerning the particular transaction.

### 3. Same—Duty of One in Confidential Relation.

If the confidential relation between the parties as to the particular transaction operates largely to cause the substitution of the defendant's will for that of the plaintiff, as to the material matters involved in the sale and conveyance, it then becomes the duty of the defendant to exercise that degree of care in relation to the rights and interests of the plaintiff in the transaction which an ordinarily prudent person would use in the care of his own property rights and business interests.

### 4. Same—Abuse of Confidence.

If the confidential relation as defined is present between the parties in the transaction, the failure of the defendant to discharge his legal duty owing to the plaintiff will operate to cancel the conveyance between the parties.

### 5. Same—Burden of Proof.

The plaintiff must prove by clear and satisfactory evidence the existence and presence of the confidential relation in the transaction, and the violation of the duties owing by the defendant to the plaintiff.

### 6. Action—Right of Action—Requisites.

In the absence of a contract or legal requirement to perform a service for another, the failure to so do cannot become the basis of a legal action against another. The right of legal action against another rests upon the breach of a legal duty, resulting in damages to the plaintiff.

### 7. Fraud—Misrepresentations.

Statements or misrepresentations between the parties having equal knowledge about the subject-matter will not constitute actionable fraud.

### 8. Same—Opinions as to Value.

Misrepresentations of value of property between the parties equally situated in the premises become and are mere opinions of the speaker. Opinions as to value cannot become the basis of an action between the parties unless coupled with unlawful acts which are calculated to and would mislead a reasonably prudent person in the management of his business affairs.

### 9. Appeal and Error — Review of Equity Case—Disposition.

In cases of purely equitable cognizance it is within the power of this court to consider the entire record and weigh the evidence, and if the judgment of the trial court is clearly against the weight of the evidence, to render or cause to be rendered such judgment as the trial court ought to have awarded in the first instance.

### 10. Same—Cancellation of Instruments—Refusal.

We have carefully examined the record, and find that the plaintiff has not brought himself by sufficient proof within the rule for judgment against the defendants.

### 11. Same.

Record examined, and held to support the judgment of the trial court.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by Hector Derdyn and Sylvia Derdyn against E. W. Low et al. for the cancellation of royalty deeds of conveyances executed and delivered by the plaintiffs to E. W. Low. Judgment for defendants. Plaintiffs bring error. Affirmed.

H. G. Butts, O. P. Thompson, and C. D. Bennett, for plaintiffs in error.

Blanton, Osborne & Curtis and Stuart, Sharp & Cruce, for defendants in error.

Opinion by STEPHENSON, C. Heretofore and on March 31, 1922, the plaintiffs commenced their action against E. W. Low et al. for the cancellation of certain royalty deeds given on the lands of plaintiffs by the latter to the defendants. The plaintiffs alleged fraud upon the part of E. W. Low and T. G. Mays, in procuring the plaintiffs to execute and deliver the option and deeds of conveyances. The substance of plaintiffs' proof in support of the allegations of fraud is that Hector Derdyn is a native Belgian and came to this country with his wife in 1908, and has not sufficient understanding of the English language to render him capable of dealing at arms length with other men in business transactions. The proof shows that the plaintiffs first settled in Illinois, and in 1911 came to Pauls Valley for the purpose of purchasing government lands then being offered for sale in Garvin county. The plaintiffs purchased two or three tracts of land and handled the transactions through the First National Bank, in which E. W. Low was cashier, and T. G. Mays was president. The plaintiffs continued to live in Illinois until the year 1917, and during this period of time purchased several other tracts of land situated in Garvin county, and handled the matters largely through the bank in which defendants are officers. The plaintiffs allege that the business relations had between the plaintiffs and defendants created what is known in law as a confidential relationship. The record shows that the plaintiff by letter gave the defendants written instructions in relation to the disposition of his business matters. The plaintiff ofttimes went into minute details advising the defendants the exact sums of money owing to various parties in connection with the transactions. The instructions were carried out by the defendants in relation to the business matters intrusted to the defendants by the plaintiff. The plaintiff frequently prepared or caused to be prepared the legal instruments relating to his business transactions and transmitted them with letter to the defendants, directing them in the manner of closing the transactions. The plaintiff with his wife and family moved to Garvin county in 1917, and has continued to live on his holdings at all times since that date. The plaintiff acquired about 2,400 acres of land in Garvin county, and borrowed considerable of the purchase price through the First National Bank, and further sums for other business operations, and improvement of the lands

purchased by him. It is alleged and sought to be proven by the plaintiff that defendant Low advised him as to the advisability of purchasing two or three of the tracts. This is denied by the defendant. The plaintiffs owed the First National Bank various sums of money from time to time until the indebtedness totaled about $15,000. The plaintiff further alleged and undertook to prove that the defendants assured him when he came to Garvin county that they would loan him such sums of money as were needed by him in the operation of his business affairs. Later the plaintiff procured a loan on his land holdings and from the proceeds paid the indebtedness owing to the bank, except about $1,500. The plaintiff testified that the defendants advised him at the time of procuring the farm loan that they would loan him such sums of money as he might need in his business operations. Some of the commission notes and interest on the principal indebtedness would become due about the 1st of February, 1920. Prior to this time a well was being drilled for oil and gas, some few miles distant from the plaintiff's holdings. The evidence shows that the plaintiff had sold oil and gas leases on virtually all of his holdings, and so far as the records show was as familiar with the oil and gas possibilities in that section as any other person. The development was in what was known as wild cat territory and no production had been previously brought in. The plaintiff went to the First National Bank about January 15, 1920, to make inquiry about borrowing money to meet the interest and commission notes that would become due about February 1st, and also to make arrangements for the payment of taxes. The defendants did not refuse to make the proposed loan. In the course of the conversation Mays offered to purchase options for the sale of an undivided one-half interest in the royalty right in four 320-acre tracts of land, and to pay $750 for a conveyance of an undivided one-half interest in the royalty rights in each of the tracts. The plaintiff testified that he did not want to execute options and deeds of conveyances for the consideration named, but after considerable discussion of the matter and persistence on the part of the defendants, the plaintiff testified that he agreed to return again in the afternoon and follow up the negotiations. The plaintiff returned in the afternoon for further discussion of the sale and it was finally agreed between the parties that the plaintiff would give the options for $750 a tract. The following day the options were executed between the parties on January 16, 1920. The plaintiff further testified that

on January 19th, the well that was being drilled showed evidence of gas production, but the records do not disclose that any of the defendants possessed knowledge that it would likely produce gas at the time of the execution of the option contracts. Later, and on February 6th, the plaintiff, pursuant to the option agreement, executed a deed of conveyance for an undivided one-half interest in the royalty rights in one of the tracts for which he received $750. At the direction of the plaintiff the deed provided that the plaintiff should receive the entire of all renewal payments, and that if either or any of the leases lapsed, the plaintiff was to receive the entire bonus for any new leases, and further provided that the assignment should not interfere with the plaintiff making any new leases in the event of the lapse of the present leases. Later followed the execution of other royalty deeds in controversy. Subsequently a well drilled on either side of the holdings proved to be a dry hole; the defendants testified that they were then unable to get an offer of any sum for their holdings. Later production was brought in near the holdings of the defendants which proved to be of considerable value.

In a trial between the parties to this cause judgment went against the plaintiffs denying cancellation, and they have brought error to this court for review. The record is voluminous and minutely details all business transactions had between the plaintiff and the bank, and defendants, but we have stated the case sufficiently to pass upon the errors assigned by plaintiffs for reversal. The plaintiff seeks a reversal of the cause on the following grounds:

"That the judgment is against the clear weight of the evidence and is contrary to law."

We will first consider the relation between the parties in respect to the transaction complained about. The record does not show that the plaintiff had heretofore intrusted to the defendants the duty of selling real estate and interests therein for the plaintiff. Regardless of what might have been the reason for so doing, the plaintiff had reserved unto himself the handling of this particular part of his business. The record does not show that the plaintiff had relied on the defendants to sell and dispose of any of his property in the past. The defendants had, however, performed many other services for the plaintiff through their bank in handling the details of closing real estate purchases for the plaintiff. The bank in which the defendants were officers had made many loans to the plaintiff for the purchase of

lands and improvements thereon. At the time of the transaction herein complained about the plaintiff only owed the bank about $1,500. The loan for which the plaintiff had applied was for about $1,000 to meet other obligations. In order for a contract or conveyance to be canceled on the ground that a confidential relation existed between the parties, the plaintiff must show the existence of a legal duty owing by the defendant to the plaintiff, and the breach of the duty resulting in injury to the plaintiff. If the plaintiff relies upon undue influence as flowing from a confidential relation for the cancellation of the conveyance, the plaintiff must show that the confidence reposed in the defendant lulled the plaintiff into a sense of security in dealing with the defendant concerning the particular transaction. If in a transaction between the parties, the plaintiff reposes confidence in the defendant to that degree which causes the plaintiff to surrender to the defendant those duties ordinarily exercised by the grantor in determining the reasonable worth and market value of the property sold and the terms and provisions of the conveyance, and the defendant, knowing the existence of the confidence reposed in him by the plaintiff, fails to use that degree of care that an ordinarily prudent man would have in the protection of his own property rights, the breach of the duty amounts to constructive fraud. Proof of the existence of the constructive fraud will operate to set aside the conveyance. In other words, if the confidential relation operates to cause the substitution of the defendant's will for that of the plaintiff as to the reasonable market value of the property, and other material matters and provisions of the contract or conveyance, it then becomes the duty of the defendant to exercise that degree of care in relation to the matter that an ordinarily prudent business man would have used in respect to his own property. Elliott on Contracts, section 140; Townson et al. v. Moore et al., 173 U. S. 17, 43 L. Ed. 597; Shea v. Murphey (Ill.) 45 N. E. 1021; Farnworth v. Noffsinger (W. Va.) 33 S. E. 246; Seward v. Seward (Kan.) 53 Pac. 63; Mallow v. Walker (Iowa) 88 N. W. 452. If the relation exists and the defendant fails to perform the legal duty owing to the plaintiff, the latter is entitled to a cancellation of the contract of conveyance. If the plaintiff relies on the existence of a confidential relation between the parties and the failure to discharge the legal duty owing to the plaintiff as grounds for cancellation of the conveyance, the plaintiff must prove that the existence of the confidential relation operated in substituting

the will of the defendant for that of the plaintiff in the material matters relating to the sale which resulted in the injury to plaintiff's rights, by clear and satisfactory proof. Pomeroy's Equity Jurisprudence, section 951; Hayden et al. v. Dannenberg et al., 42 Okla. 776, 143 Pac. 859; Rogers et al. v. Harris, 76 Okla. 215, 184 Pac. 459.

In this case the proof by the plaintiff is that the defendants did not make any expression as to the value of the property relating to an undivided one-half interest in the royalty rights. Ordinarily a royalty deed carries with it the right to receive the payment of renewals and bonus in making new leases. At the request of the plaintiff the deed of conveyance was made to provide that the grantor should receive all renewals and bonus on new leases, and further, that the conveyance should not operate to hinder the plaintiff in making new leases on the property. The purchase price offered by the defendants was $750 per tract, which was accepted by the plaintiff. The defendant testified that he thought the property was worth about $1,000 per tract. Negotiations were had between the parties in the morning and again in the afternoon. The options for the sale and purchase of the undivided one-half interest in the royalty rights were executed the following day. There was nothing in the way of the plaintiff offering the property for sale to other parties. There was testimony that the plaintiff was capable of handling the usual and ordinary business affairs intelligently. There was ample time and opportunity for the plaintiff to reflect on the terms of the sale, between the afternoon and following day. The deeds of conveyance in compliance with the options were executed by the plaintiff several days and weeks later. We think the plaintiff does not bring himself within the rule laid down by the authorities herein, in the showing and proof that he was overreached in the transaction by the defendants. The plaintiff was at the defendants bank seeking to borrow money to meet obligations owing by the plaintiff to other parties nearly a month in the future. No legal duty rested on the defendant or the bank by reason of previous banking relations or contract to furnish the money to the plaintiff to meet the payment of interest and commission on his farm loan. Even if the defendants had refused to make the loan it would make no difference in this case. It may be that the plaintiff would not have sold the undivided one-half interest in the royalty right, if it had not been for the necessity in meeting the future payments on his farm loan. This was the concern of the plaintiff. He was free to refuse to make this sale for the purpose of raising the money to meet the payments. So far as the record shows, the plaintiff was sufficiently free and in the exercise of his own will to the point where he might sell for whatever price he could secure and to whomsoever he might choose. The plaintiff further complains as a ground for cancellation that the defendant stated that the purchase was like buying moonshine, and that about 97 per cent. of the wildcat enterprises did not develop oil or gas. So far as the record shows, the parties possessed equal knowledge from which to judge of the prospects about the wells drilling in the neighborhood of the property to develop oil or gas. Statements about matters equally within the knowledge of the parties cannot become actionable fraud in a suit between the parties. Eysenbach v. Cardinal Petroleum Co., No. 11474, decided May 15, 1923, and National Surety Co. v. Craig, 94 Okla. 63, 220 Pac. 943; Long v. Woodman, 58 Maine 49; Williamson v. Holt, 147 N. C. 515, 61 S. E. 384. If the plaintiff should take the expression of the defendants that the royalty rights were like moonshine as relating to the value of the property, it was a statement made about the prospects of the wild cat development. The record shows that the parties possessed equal knowledge about the condition of the property and its value. The plaintiff was familiar with the property and developments and had previously sold leases on this property and other property in the vicinity. Statements made by one of the parties in relation to a property value about which the parties have equal knowledge, become and are merely the opinions of the speaker. The plaintiff knew that whatever value the property then had was speculative, and its future value depended upon the development of production in the field. In view of the knowledge of the parties about the subject-matter, whatever expressions the defendant made about the values of the property to the plaintiff could be nothing more than the expression of an opinion. Mere expression of opinions as to value, standing alone, could not become actionable fraud between the parties. Beck v. Finley, 77 Okla. 213, 187 Pac. 489; Hazlett et al. v. Wilkin, 42 Okla. 20, 140 Pac. 410; Wyrick v. Campbell, 67 Okla. 240, 170 Pac. 267; Gordon v. Butler (U. S.) 27 L. Ed. 1166; Turnbaugh v. Hasselton, 72 Oklahoma, 180 Pac 368; Vulcan Metals v. Simmons Mfg. Co., 248 Fed. 853; Subke v. Condor (Kan.) 155 Pac. 793.

In cases of purely equitable cognizance it is within the power of the Supreme

Court to consider the entire record, weigh the evidence, and where the judgment of the trial court is clearly against the weight of the evidence to render or cause to be rendered, such judgment as should have been awarded by the trial court. Jones v. Thompson, 55 Okla. 24, 154 Pac. 1139. The Supreme Court has the power in proceedings in equity to ascertain if the judgment is contrary to the evidence, and render or cause to be rendered such judgment as ought to have been rendered in the first instance. Hawkins v. Boynton Land. Mining & Investment Co., 59 Okla. 30, 157 Pac. 753. In considering the sufficiency of the evidence to support the findings and judgment of the trial court, this court will not set aside the findings of fact and judgment, unless after a consideration of the entire record it appears that such findings and judgment are clearly against the weight of the evidence. Smith v. Skelton, 63 Okla. 116, 163 Pac. 268; Thomas v. Halsell, 63 Okla. 203, 164 Pac. 458. We have carefully examined the record, and do not find that the judgment of the trial court is clearly against the weight of the evidence.

Therefore, it is recommended that the cause be affirmed.

By the Court: It is so ordered.