Manford W. BLANCHARD, Plaintiff in Error,

v.

Mattie GORDON, Defendant in Error.

No. 40788.

Supreme Court of Oklahoma.

Sept. 20, 1966.

Hal Welch, Hugo, for plaintiff in error.

Tom Finney, Idabel, Lon Kile, Hugo, for defendant in error.

PER CURIAM:

This case comes up on appeal by Manford W. Blanchard, plaintiff in error, from an adverse decision rendered against said plaintiff in error, and in favor of Mattie Gordon, defendant in error, in the District Court of Choctaw County, Oklahoma, in an action wherein plaintiff in error sought to set aside and cancel a certain deed to real estate consisting of residential property in Hugo, Oklahoma. The parties will be referred to as they appeared in the court below.

It is undisputed that prior to execution of the deed in question Ben L. Blanchard was the owner of said real estate, consisting of a 50 foot lot with a dwelling thereon. On May 6, 1960, he executed a quitclaim deed covering said property, which deed was thereafter placed in the possession of the defendant, but was not recorded until May 1, 1961, the day immediately following the death of the grantor. From a time prior to the execution of said deed, and until his death, the grantor was an invalid, and resided in the house on the property in question. From early in 1959 until about

three weeks before his death, the defendant, sister of Ben L. Blanchard, stayed with him in the same house, and looked after him. About three weeks before the death of Ben L. Blanchard the defendant became ill and entered a hospital in Dallas.

Although not involved in the present appeal, the record in this case reveals that the deceased grantor left a will, wherein he purported to leave his estate to the defendant, but said will omitted to mention the plaintiff, son of said Ben L. Blanchard, and the probate of the will is the subject of an appeal not yet decided at the time this appeal was perfected.

After trial of this cause to the court, without a jury, a judgment was entered in the District Court of Choctaw County, finding generally in favor of the defendant and against the plaintiff. The trial court specifically found that the deed complained of by plaintiff was executed and delivered by the grantor during his lifetime to the defendant and that at the time of the execution and delivery of said deed to the defendant the grantor was not acting under menace, duress, undue influence or fraud, and that upon said execution and delivery of the said deed the full, legal and equitable title in and to the disputed real estate became vested in the defendant. The court in its judgment proceeded to quiet title to said real property in the defendant as against all claims by the plaintiff.

Thereafter, plaintiff's motion for new trial was overruled by the trial court, and this appeal was duly perfected.

Upon the trial of the case in the court below both the defendant and her husband were permitted to testify over objections by plaintiff as to their competency. The competency of the defendant as a witness was challenged by the plaintiff as being in violation of Title 12 O.S.1961, § 384, which provides as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by said party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; * * *."

▮ The trial court correctly overruled the objection to the competency of defendant as a witness, for the reason that the defendant, grantee in the deed in question, was defending and not asserting a cause of action. In Clammer v. Fullerton, Okl., 259 P.2d 823, we held that the inhibition of the statute in leveled at persons asserting a cause of action, not, as here, against persons asserting a defense to a cause of action. As in the case last cited, the defendant here does not occupy the position of one who "has acquired title to the cause of action" from the deceased person. Defendant here was not asserting any cause of action, but was merely trying to defend herself against the cause of action asserted by the plaintiff. Watson v. Johnson, Okl., 411 P.2d 498, 503; Shaw v. Shaw, Okl., 282 P.2d 748; Berry v. Janeway, 206 Okl. 555, 245 P.2d 71.

▮ Plaintiff asserts a violation of Title 12 O.S.1961, § 385, Sub-section 3, in that the trial court permitted defendant's husband to testify over the objection of plaintiff as to his competency. However, the cited statutory provision contains a specific exception to the effect that either husband or wife may testify concerning transactions in which one acted as agent for the other. Under the circumstances shown here the trial court correctly permitted the husband to testify as a competent witness, since it is apparent that he was acting as agent for his wife in the transaction which was the subject of his testimony, i. e., the placing of the deed in the safe deposit box which was theirs jointly. City of Bristow v. Schmidt, 170 Okl. 338, 40 P.2d 656.

▮ Although asserting the incompetency of defendant and her husband as witnesses in the trial of this case, plaintiff's argument for reversal is based largely on portions of the testimony given by said

witnesses. Under the rule laid down by this court in Fisher v. Pugh, Okl., 261 P. 2d 181, plaintiff is not permitted to take such inconsistent position in respect to the testimony of these witnesses. As was stated in the case last cited:

"* * * However, plaintiff likewise predicates the claim of reversible error upon the admission of the very evidence which it is contended was prejudicially admitted.

"Thus the situation may be defined in the following manner. If the objectionable testimony could be relied upon as sufficient to destroy the presumption of delivery of the deeds to defendants at the time of execution thereof then the trial court properly could consider this evidence in reaching his determination as to whether delivery had been made. If the testimony was incompetent it was then for the trial court to determine as a matter of law whether plaintiff had discharged the burden of rebutting the presumption of delivery. Most certainly it cannot be seriously urged by plaintiff that he is entitled to have such testimony considered for one purpose, but that the admission thereof must be considered erroneous for any other purpose. If the testimony objected to is to be held erroneous for one purpose, then it cannot be considered for any other purpose. Under no circumstances can plaintiff rely upon certain testimony in an effort to establish the issue in his case and then, in the same breath assert prejudicial error based upon the selfsame evidence. * * *."

However, as above indicated, the trial court correctly ruled that defendant and her husband were both competent witnesses, and even taking into consideration such portions of their testimony as might be thought favorable to plaintiff, in his view of the case, and we do not concur in all of his conclusions in that regard, we still find no ground for reversal.

Plaintiff argues that the finding of the trial court as to delivery of the deed with intent to pass title was against the clear weight of the evidence. We do not agree. Although there are certain circumstances which might be construed as consistent with retention of title by the grantor, even though the deed was physically in possession of the grantee, these same circumstances are not inconsistent with passage of title to the grantee.

The evidence indicates that when the deceased gave the deed to his defendant sister, he cautioned her about keeping it in a safe place. From this, plaintiff reasons that the delivery was one for safe keeping only with no intention to pass title. However, we consider such circumstances to be entirely consistent with a mere admonition by the brother to the sister that she should take good care of the deed, as it was a valuable document and she should not run any risk of losing it.

Again, the circumstance that the deceased had other papers of his in the safe deposit box of the defendant and her husband, where the deed was kept a part of the time, does not impel a conclusion that the deed also belonged to the deceased or had not been finally delivered to the defendant with intent to pass title.

Further, the circumstance that the deceased continued to reside in the property, although perhaps consistent with continued ownership by him, is not inconsistent with ownership thereof by the grantee in the deed, defendant herein. The fact that the grantor continued in control and management of the property conveyed during his lifetime would not destroy the presumption of delivery arising from due execution and recordation of the deed. Fisher v. Pugh, supra.

There was evidence that ad valorem taxes on the property for the year 1960 were paid on January 6, 1961, in the name of the deceased, and that a homestead exemption was allowed. The tax status of the property for 1960 was fixed on January 1st of that year, at a time when Ben L. Blanchard was the record owner of the property, holding both legal and equitable

title, and prior to execution of the deed here under attack. He was living at the property at that time. The receipt was issued to Ben L. Blanchard, but the testimony of the deputy county treasurer was that the payment was made in cash, and there is nothing in evidence to show by whom payment was made. It may have been made by defendant from her own funds, or by the deceased, but in either event it would have been quite natural for the official receiving payment, especially in cash, to have made out the receipt in the name of the person shown by the tax rolls to be the owner. We do not attach any logical significance to the issuance of such receipt for the 1960 taxes.

There was testimony that a homestead exemption claim was filed on the property for 1961, bearing a signature purporting to be that of the deceased. Under the homestead exemption statute it is available only to a person residing in the property on January 1st, and who is the record owner of the property on that date. The deceased was the only person qualified to claim the homestead exemption as a matter of law but whether he actually signed the application for exemption is not shown by the evidence. The official who filled out the form had no recollection as to whether the deceased was actually present and signed the form. She testified that she did not know Ben L. Blanchard and could not identify his signature. Plaintiff made no further effort to identify the signature as being actually that of the deceased. Under such state of the record we cannot attach any compelling probative effect to the filing of the claim for homestead exemption.

██ In a number of earlier cases, it has been held that where a grantee is in possession of a deed the presumption in favor of delivery can be rebutted only by clear, positive evidence to the contrary. Fisher v. Pugh, supra; Hamburg v. Doak, 207 Okl. 517, 251 P.2d 510; Wasson v. Collett, 204 Okl. 360, 230 P.2d 258; McKeever v. Parker, 204 Okl. 1, 226 P.2d 425; Yarbrough v. Bellamy, 197 Okl. 493, 172 P.2d

801; Abrams v. Neal, Adm'r., 178 Okl. 158, 61 P.2d 1103.

In Hamburg v. Doak, supra, the facts were somewhat similar to those before the court in the instant case, although perhaps less favorable to the grantee. In said case we said:

"Plaintiffs contend there was no delivery of the deed in question, therefore it is invalid and should have been set aside by the trial court under the evidence. The record does not show manual delivery of the deed by D. N. Doak to Mary Kate Doak, but does show he executed same and acknowledged the execution before a notary public in the presence of Mary Kate Doak, who was in the room, doorway or just outside the door; that he was sick in bed and never left the hospital after executing the deed, died on the 29th day of March, 1949.; on April 1, 1949, said deed was filed for record and recorded in the office of the county clerk of Stephens County, Oklahoma, and at the trial of this case the deed was in the possession of the defendant. There is no evidence of non-delivery, and under the facts and circumstances shown by the record, the presumption is the deed was delivered to the grantee the date it bears and the burden of proving the deed in question was never, in fact, delivered rests upon the plaintiffs. * * *"

In the instant case, according to the testimony of Ethel Lawhorn, called as a witness by the defendant, she was present in the home of the deceased practically every day, was acquainted with the defendant, and saw the deed in question shortly after it was made. According to her testimony the deceased called his sister, and the sister and the witness walked into the room and the deceased showed them the deed. When asked what the deceased had to say at that time she stated:

"Mr. Blanchard said, 'Well, this is it. This is the item that will stop the static, that will end all static, and the place is Mattie's, and she can do what she pleases

with it, and that big sis over at Spiro can raise all the hell she wants to and it won't do her any good. It is Mattie's now.' "

The same witness further stated that immediately after the above statement by the deceased he handed the deed to the defendant, Mattie Gordon. On cross examination the witness further related that the deceased told Mrs. Gordon the deed was hers and that she could sell the place if she wanted to do it. In view of the aforementioned testimony, by a third party present at the time the deed was handed to the defendant, it cannot be said that the finding of the trial court as to delivery of the deed and passage of title thereby was against the clear weight of the evidence. On the contrary, such finding would appear to be well supported by the evidence presented.

There remains to be considered the contention by the plaintiff that a confidential relationship was shown to exist between the deceased and defendant, requiring her to assume the burden of proving that the execution and delivery of the deed was fair and free from fraud, duress or undue influence.

In this connection, it should be noted that the deceased was not shown to be incompetent or unable to look after his business by any means. He had been for forty-four years a railroad conductor and the evidence as a whole shows that during the period in question he was competent and capable of transacting business and knew what he was doing. On the other hand, the defendant was a woman sixty-five years of age at the time of her brother's death, who had no education and had never attended school.

Although there is certainly evidence in this case to the effect that the defendant was close to her brother, lived in the same house with him during the last months of his lifetime and took care of him, for which services he may have paid or agreed to pay her a salary as well as board and room for the sister and her husband, and although it was shown that certain joint bank accounts were established, and that the deceased reposed confidence in the sister and her husband, we find no evidence in this case which would raise a presumption of fraud, undue influence or absence of consideration so as to cast the burden upon the defendant to show that the transaction was fair and free from fraud, duress or undue influence.

In Smith v. Smith, Okl., 365 P.2d 142, 143 (Syllabus 1), we said:

"The relation of husband and wife alone is insufficient to prove the character of confidential relation necessary to invoke the rule shifting the burden of proof to the defendant in a suit to cancel conveyances for undue influence. In addition thereto there must be proof of the substitution of the will, the lulling into a sense of security, the domination of the grantor by defendant in business decisions or other comparable elements."

We do not find in the evidence presented in the instant case any substantial indication that the defendant had assumed any dominant position over the deceased, that her will was substituted for his in any significant matter, that he was lulled into any sense of security or dominated by the defendant in business decisions. On the contrary, it appears that the deceased was clearly the more experienced and capable of the two. As bearing upon the business ability, competence, will and determination of the deceased, it should be noted that until October 8, 1959, he had done business with one of the local banks, but for some reason became dissatisfied with that bank, sent for one of the officers of another bank in the same community, and told him that he wanted to transfer all of his money to the bank represented by that officer. He also told the bank officer at the same time that he desired the money put in his name and the defendant's, so that she could get money if she needed it to take care of him and to take care of her. On the same date he gave instructions to the bank where he had formerly done business to deliver the contents of his safe deposit box to a friend.

■ We are committed to the rule that where the plaintiff in an action to cancel a conveyance relies on undue influence as flowing from a confidential relation, such plaintiff must show by sufficient proof that such confidence resulted in a sense of security on the part of the one whose confidence was imposed upon, and must prove by clear and satisfactory evidence the existence of the confidential relation in order to shift the burden to the defendant. Derdyn v. Low, 94 Okl. 41, 220 P. 945; Mahan v. Dunkleman, 205 Okl. 54, 234 P.2d 366.

But the instant case is wholly lacking in any evidence tending to prove the substitution of the will of Mattie Gordon for that of Ben L. Blanchard, or that her relationship to him lulled him into any sense of security, or rendered him unduly susceptible to her influence.

■ The evidence was not by any means sufficient to establish a confidential relation as above defined, so as to require the defendant to assume the burden of proof and to prove the validity of the gift of the property to her.

■ This court has held many times that where the evidence in a case of equitable cognizance is conflicting, the trial court's finding on such evidence will not be disturbed on appeal unless clearly against the weight of the evidence. First National Bank of Bethany v. Eagan, Okl., 263 P.2d 157.

Our consideration of the record and the briefs in this case impels us to the conclusion that the finding of the trial court, and judgment in favor of the defendant, was not clearly against the weight of the evidence and should be affirmed. It is so ordered.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY and HODGES, JJ., concur.

The Court acknowledges the services of Special Master JOHN M. LUTTRELL, who, with the aid and counsel of Special Masters WILLIAM H. MATTOON and ROBERT L. BAILEY, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BLACKBIRD, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.