944 F.2d 724
 DEVERY IMPLEMENT COMPANY, an Oklahoma general partnership,
Plaintiff-Appellant and Cross-Appellee,
v.
J.I. CASE COMPANY, a Delaware corporation, Steiger Tractor,
Inc., a Delaware corporation, Defendants-Appellees
and Cross-Appellants,
Tenneco Inc., a Delaware corporation, Defendant.
 Nos. 90-6140, 90-6155.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 10, 1991.
 
 Richard C. Ford (Larry E. Joplin, Mark S. Grossman, with him, on the brief), Crowe & Dunlevy, Oklahoma City, Okl., for plaintiff-appellant and cross-appellee.
 Brian W. McGrath (Robert A. DuPuy, Foley & Lardner, Milwaukee, Wis., Joseph H. Bocock, M. Richard Mullins, McAfee & Taft, Oklahoma City, Okl., with him, on the brief), for defendants-appellees and cross-appellants.
 Before LOGAN, BALDOCK and BRIGHT,* Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 This case arises from the circumstances surrounding the termination of plaintiff-appellant Devery Implement Company (Devery), an Oklahoma general partnership, as a dealer of defendant-appellee Steiger Tractor, Inc. (Steiger). Steiger is a farm equipment manufacturer headquartered in North Dakota. The termination occurred in 1988, following defendant Tenneco Inc.'s (Tenneco) acquisition of Steiger. Tenneco subsequently assigned Steiger to another of its subsidiary corporations, defendant-appellant J.I. Case Company (Case). Devery brought this diversity action claiming that the termination was a breach of fiduciary duty and a breach of the implied covenant of good faith and fair dealing arising from its dealer agreement with Steiger. After pretrial motions, only the claims for breach of fiduciary duty against Case and Steiger survived.[1] The jury found in favor of Devery on these claims, and the court entered judgment for damages equalling the jury's finding of one year of lost profits plus punitive damages.
 
 
 2
 Devery appeals, contending that the district court erred in (1) limiting the lost profits damages calculation to one year and (2) granting summary judgment in favor of the defendants on the claim for breach of implied covenant of good faith and fair dealing. Defendants cross-appeal, contending that (1) they had no fiduciary duty to Devery or, in the alternative, (2) they did not breach their fiduciary, and (3) the jury's damage verdict was based on inadmissable evidence, (4) the award of punitive damages was inappropriate and (5) the judgment violated the contracts clause of the federal constitution. Under the circumstances of this case, neither of Devery's theories of liability is tenable. We therefore must reverse the judgment.
 
 I. Background
 
 3
 Devery became a Steiger tractor dealer in 1974 and continued as such until the dealership agreement was terminated in 1988. Although Devery sold many Steiger tractors throughout the relationship, Steiger tractors were never Devery's primary product line. XIII R.S. 258. In fact, Devery did not sell any Steiger tractors between 1986 and 1988 when the dealership was terminated. XIII R.S. 275. Therein lay the controversy between Devery and the defendants. When Case began operating Steiger after the 1986 Tenneco acquisition, it implemented a $50,000 minimum annual whole goods (tractors as opposed to parts and services) sales requirement to cover its dealer support costs. This was permissible pursuant to the express language of the dealership agreement between Steiger and Devery,[2] but Steiger had not previously implemented such requirements. R.V. II at 207.
 
 
 4
 If Devery had sold a single tractor in 1987, it would have met the $50,000 minimum. Instead, it sold only parts and services. As a result, Case gave Devery ninety days notice that its dealership would be terminated for lack of sales, this, in spite of the contract's provision for termination at will. During the notice period, Case approached Devery with an offer of a full-line Case dealership to replace the soon-to-be-terminated Steiger dealership. Devery in turn requested a one-year extension of the Steiger dealership for the stated purpose of allowing time to consider the details of the full-line Case dealership offer. Case rejected the one-year extension, Devery did not accept the full-line Case dealership offer, and the Steiger dealership agreement terminated at the end of the ninety-day notice period.
 
 
 5
 In support of its theories of breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing, Devery claimed that Case (1) denied customary marketing support, (2) arbitrarily and unreasonably imposed the mandatory minimum sales requirement and (3) unreasonably refused to extend the Steiger dealership until the details of the full-line Case dealership offer could be considered. Upon defendants' motion for summary judgment, the district court held that the termination was proper pursuant to the dealership agreement termination-at-will clause as interpreted under Oklahoma law. The court therefore granted summary judgment in favor of defendants on claim (3) above to the extent that it pertained to the breach of implied covenant of good and fair dealing theory. Devery later abandoned claims (1) and (2) under the good faith and fair dealing theory of liability because it could not prove damages through the date of the termination. This left only the breach of fiduciary duty theory. The district court, ruling that material factual issues remained unresolved, allowed all of the claims to proceed to trial under the breach of fiduciary duty theory. At trial the jury found that a fiduciary relationship existed between Devery and defendants and that defendants breached their fiduciary duty. Subsequently, the district court denied defendants' motion for judgment notwithstanding the verdict (JNOV) or in the alternative new trial and entered judgment for damages equalling the jury's finding of lost profits for one year.
 
 
 6
 For the sake of clarity, we will not address the issues in the order presented by the parties in their respective appeals and cross-appeals. Instead, we will consider first the district court's summary judgment with respect to the bad faith claim and then the district court's denial of defendants' requested JNOV on the fiduciary duty claim.
 
 
 7
 II. Implied Covenant of Good Faith and Fair Dealing
 
 
 8
 We review the summary judgment determination de novo, applying the same standard as the district court. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the nonmoving party bears the burden at trial, the moving party need only point to those portions of the record which demonstrate an absence of a genuine issue of material fact as to the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the nonmoving party fails in this endeavor, and the moving party is entitled to judgment as a matter of law given the operative facts, summary judgment will lie. Id. at 256-57, 106 S.Ct. at 2514-15. See also Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In exercising de novo review we afford no deference to the district court's interpretation of state law. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1224, 113 L.Ed.2d 190 (1991).
 
 
 9
 A diversity court must apply the substantive law of the forum state, including its choice of law provisions. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); Equifax Services, Inc. v. Hitz, 905 F.2d 1355, 1360 (10th Cir.1990); Moore v. Subaru of America, 891 F.2d 1445, 1448 (10th Cir.1989). Devery contends that the Oklahoma forum choice of law provision governing contract disputes requires the application of North Dakota law to the bad faith claim, not Oklahoma law as applied by the district court. Nevertheless, Devery argues for reversal of the summary judgment pursuant to either North Dakota or Oklahoma law. We address the choice of law issue first, for Devery's principal argument rests in the application of North Dakota law.
 
 
 10
 Devery refers us to the North Dakota Century Code § 51-07-01.1 and to the North Dakota Supreme Court's decision in Production Credit Ass'n v. Halverson, 386 N.W.2d 905 (N.D.1986), contending that the statute and case together clearly recognize a contract action for breach of the implied covenant of good faith in this situation. Because Oklahoma is the forum, the relevancy of this argument depends entirely upon Oklahoma's choice of law rule for contract disputes. Oklahoma law provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law of the place it was made." Okla.Stat.Ann. tit. 15, § 162 (West 1984). See also Bohannan v. Allstate Ins. Co., No. 72262, slip op., at ---- (Okla. July 2, 1991),(noting in dictum that § 162 "remain[s] a part of our law in ordinary contract cases").
 
 
 11
 The dispute in this case centers on whether "the place of performance is indicated in the contract." Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir.1985) (emphasis in original). Devery contends that, for the place of performance to be "indicated" in the contract, the contract must expressly provide as such. Devery underlies this argument with the observation that this bilateral contract was necessarily performed both in North Dakota, defendants' principal place of business, and Oklahoma, Devery's principal place of business. In light of this ambiguity, Devery argues for the application of the law of North Dakota, the place where it alleges the contract was made.[3]
 
 
 12
 The Oklahoma Supreme Court, however, has rejected Devery's reasoning, holding that "generally a contract is to be interpreted under the rule of lex loci solutionis, the law of the place of performance. It is only when there is no indication in the contract where performance is to occur that the interpretation would apply the lex loci contractus rule." Panama Processes v. Cities Service Co., 796 P.2d 276, 287 (Okla.1990) (emphasis in original). Although the contract in Panama Processes did not contain an express designation of the location of performance, the court found that the location as intended by the parties was apparent because of the contract terms--terms which called for the majority of the contractual duties to be carried out in Brazil even though some of the duties were to be carried out in New York. See id. at 287-288. See also Rhody, 771 F.2d at 1420 (citing Head v. New York Life Ins. Co., 43 F.2d 517 (10th Cir.1930) and Monahan v. New York Life Ins. Co., 26 F.Supp. 859 (W.D.Okla.), aff'd, 108 F.2d 841 (10th Cir.1939), cases in which "specification of a place for payment of [insurance] premiums and benefits ... signifies the parties' designation of that location as the place of performance of the contract"). The Panama Processes interpretation tracks the statutory choice of law provision and clearly places primary emphasis on the place of performance in interpreting the parties' intent regarding choice of law. On the other hand, Devery's suggested rule would require the application of the law of the place of making in every bilateral contract which lacks an express designation of the place of performance regardless of the commercial realities of the transaction; we do not think that Oklahoma precedent supports such a mechanical interpretation.
 
 
 13
 Under the rationale set forth in Panama Processes, "the parties' intent, gleaned from the contract as a whole, requires" that we apply Oklahoma law. 796 P.2d at 288. We come to this conclusion for the simple reason that the parties contracted for the primary purpose of selling and servicing Steiger tractors in Devery's "trade area" which was centered in Oklahoma, not North Dakota. We therefore have "no need to determine the law of the place where the contract was made, nor to adopt any other approach to determine the applicable law." Id. at 287. The law of Oklahoma applies.
 
 
 14
 Turning now to the proper body of law, we note that every Oklahoma contract contains an implied covenant of good faith and fair dealing. See Wright v. Fidelity & Deposit Co., 176 Okl. 274, 54 P.2d 1084 (1936); Restatement (Second) of Contracts § 205. See also Panama Processes, 796 P.2d at 289. The covenant requires that no party "destroy or injure another party's right to receive the fruits of the contract." Wright, 54 P.2d at 1087. Devery, without citation to case-law, contends that defendants breached this covenant when they terminated the dealership agreement. We assume that Devery bases this argument on Hall v. Farmers Insurance Exchange, 713 P.2d 1027 (Okla.1985), as it argued below. The Hall court held that the implied covenant of good faith and fair dealing contained in every contract entails a covenant by a principal not to resort to a termination-at-will clause so as "to wrongfully deprive [the agent] of the fruits of his contract...." Id. at 1030 (citing Wright, 54 P.2d at 1087).
 
 
 15
 Although the language in Hall is broad, referring to the covenant of good faith and fair dealing in "all contracts," id. at 1031, Oklahoma courts have restricted the holding to its facts. For instance, the Oklahoma Supreme Court, in Burk v. K-Mart Corp., 770 P.2d 24 (Okla.1989), refused to extend the Hall holding to an employment-at-will contract in spite of the Hall court's reliance on case law from another state establishing the covenant in such situations.[4] See also Hinson v. Cameron, 742 P.2d 549 (Okla.1987). In so holding, the Burk court relied on authority to the effect that the implied covenant of good faith and fair dealing as applicable to all contracts " 'is overly broad and should not be applicable to employment-at-will contracts.' " 770 P.2d at 27 (quoting Morriss v. Coleman Co., 241 Kan. 501, 738 P.2d 841 (1987)). Given this restriction of the covenant of good faith and fair dealing, we agree with the district court that the Oklahoma courts would not apply the implied covenant in this case so as to write the termination-at-will provision out of the dealership agreement. This is not to say that the implied covenant of good faith and fair dealing does not exist in Oklahoma. To the contrary, and as the district court recognized, the covenant would apply to any action which would "destroy or injure another party's right to receive the fruits of the contract."[5] Wright, 54 P.2d at 1087. We merely hold that this covenant cannot trump a bargained-for termination-at-will clause. And Devery has not demonstrated that the clause in its dealership agreement was anything but bargained-for. The clause is valid.
 
 
 16
 Our disposition is consistent with Oklahoma's longstanding rule allowing parties the freedom to contract to any terms which are lawful. See Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 530 (Okla.1985). It is also consistent with Tenth Circuit authority. We have observed that "[t]he purpose of the good faith doctrine in contract law is to protect the reasonable expectations of the parties by 'implying terms in the agreement,' " and that the covenant generally applies to all contractual provisions. Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1267 (10th Cir.1988) (quoting Farnsworth, Good Faith Performance and Commercial Reasonableness under the Uniform Commercial Code, 30 U.Chi.L.Rev. 666, 670 (1963)). But, as noted in Big Horn, the concept of good faith becomes irrelevant in the interpretation of a contractual provision which grants "uncontrolled discretion" to one of the parties. Id. at 1267-68 (citing Tymshare v. Covell, 727 F.2d 1145, 1153 (D.C.Cir.1984)). An example of such a provision is a termination-at-will clause such as the one in this case. Id. (citing Corenswet, Inc. v. Amana Refrigeration, Inc., 594 F.2d 129, 135-39 (5th Cir.), cert. denied, 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979)).
 
 
 17
 In sum, we hold that Devery is precluded as a matter of law from asserting a contract breach resulting from the termination of the contract in these circumstances. In light of this determination, no material factual disputes surrounding the termination remain, and the defendants are entitled to summary judgment. We affirm the summary judgment.
 
 III. Fiduciary Relationship
 
 18
 Defendants contend that the district court erred in denying them a JNOV on the breach of fiduciary duty claim. They contend that they had no fiduciary relationship with Devery as a matter of law. We review de novo the denial of JNOV, applying the same standard as the district court. Anderson v. Phillips Petroleum Company, 861 F.2d 631, 634 (10th Cir.1989). A JNOV is appropriate only if "the evidence points but one way and is susceptible to no reasonable inference which may sustain the position of [the nonmoving plaintiff]." Symons v. Mueller Co., 493 F.2d 972, 976 (10th Cir.1974). See also Anderson, 861 F.2d at 634 (quoting Symons ). Again, we accord no deference to the district court's interpretation of state law. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1224, 113 L.Ed.2d 190 (1991). The parties agree that Oklahoma law is applicable.
 
 
 19
 Oklahoma courts have not given a precise definition of a fiduciary relationship, see MidAmerica Federal Sav. & Loan Ass'n v. Shearson/American Exp., Inc., 886 F.2d 1249, 1257 (10th Cir.1989), but have held that the relationship arises whenever
 
 
 20
 there is confidence reposed on one side and resulting domination and influence on the other.... [The] relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation.
 
 
 21
 Lowrance v. Patton, 710 P.2d 108, 112 (Okla.1985) (citations omitted). See also MidAmerica Federal Sav. & Loan Ass'n, 886 F.2d at 1257 (quoting Lowrance ). Another Oklahoma court described the relationship as occurring " 'when the circumstances make it certain the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible.' " In re Estate of Beal, 769 P.2d 150, 155 (Okla.1989) (quoting In re Null's Estate, 302 Pa. 64, 153 A. 137 (1930)).
 
 
 22
 Oklahoma courts have never applied these general principles to a manufacturer-dealer contract; however, the same courts have held that fiduciary relationships are not limited to any specific legal relationship. See In re Estate of Beal, 769 P.2d at 155 (" 'equity will never bind itself to any hard and fast definition of the phrase "confidential relation" ' ") (quoting Egr v. Egr, 170 Or. 1, 131 P.2d 198 (1942)); Lowrance, 710 P.2d at 111 (no "bounds to the facts and circumstances out of which a fiduciary relationship may spring"). Instead, fiduciary duties may arise anytime the facts and circumstances surrounding a relationship "would allow a reasonably prudent person to repose confidence in [another person]." In re Estate of Beal, 769 P.2d at 155. Therefore, contrary to defendants' argument, we must conclude that Oklahoma courts would recognize a fiduciary relationship arising out of a manufacturer-dealer contract if the transaction involved the facts and circumstances indicative of the imposition of trust and confidence.
 
 
 23
 Certainly, most contracts involve a degree of the factors indicative of reposed trust and confidence. For example, all contracts ultimately involve mutual intent, and many involve disparate bargaining power; however, only those instances which involve a veritable "substitution of the will of the defendant for that of the plaintiff in material matters involved in the transaction" will give rise to fiduciary duties. Sellers v. Sellers, 428 P.2d 230, 236 (Okla.1967) (citing Derdyn v. Low, 94 Okl. 41, 220 P. 945 (1922)). This ensures that common commercial dealings are not subject to heightened fiduciary responsibilities. As we have held, parties may deal at arms length for mutual profit without subjecting themselves to heightened fiduciary duties. See Appleman v. Kansas-Nebraska Natural Gas Co., 217 F.2d 843, 848-49 (10th Cir.1955) ("Mere concert of action, without more, does not establish a fiducial relationship.... It is only when by their concerted action they willingly and knowingly act for one another in a manner to impose mutual trust and confidence that a fiducial relationship arises.") (citations omitted). Our inquiry under the JNOV standard of review, therefore, is to determine whether the evidence in this case is indicative of a normal commercial dealing, or, on the other hand, whether the evidence is susceptible to any inference in favor of the jury's finding of a fiduciary relationship.
 
 
 24
 In denying defendant's motion for summary judgment on the fiduciary breach issue, the district court held that the dealership agreement itself created a material issue of fact as to whether the parties had mutual intentions and whether defendants controlled Devery to such an extent that Devery had to repose trust and confidence in defendants.[6] This determination was based on Carter Equipment Co. v. John Deere Industrial Equipment Co., 681 F.2d 386 (5th Cir.1982), in which the Fifth Circuit held that a franchise contract may provide evidence of a fiduciary relationship in Mississippi. See Devery Implement Co. v. J.I. Case Co., No. CIV-89-120-P, unpub. order at 24 (W.D.Okla. Sept. 29, 1989) (denying defendants' motion for summary judgment on the fiduciary breach claim). Later, the district court's jury instructions followed the Carter analysis, noting that the agreement could be considered evidence of a fiduciary relationship, and noting that a fiduciary relationship is atypical in a contract setting. See I R.S. doc. 147, instructions 16, 17, 17A. To emphasize this latter point, the instructions required the jury to find the existence of the relationship by clear and convincing evidence. Id.
 
 
 25
 We think that the jury instructions, although based primarily on the Carter case, provided the jury with a reasonable picture of the Oklahoma requirements for a fiduciary relationship--mutual intent, disparate bargaining power, and the resulting reposed trust and confidence. In any event, neither party challenges the instructions. And we agree with the district court that a franchise agreement or, as in this case, a dealership agreement, could, in unusual circumstances, provide some evidence of fiduciary relationship; however, we do not think that the dealership agreement alone is sufficient to establish a reasonable inference of a fiduciary relationship. The vast majority of jurisdictions that have addressed the issue in the context of franchise agreements have held that a franchise agreement cannot alone establish a fiduciary relationship. See O'Neal v. Burger Chef Systems, Inc., 860 F.2d 1341 (6th Cir.1988) (citing numerous cases).
 
 
 26
 Given this authority with respect to franchise agreements, which generally involve a greater degree of mutual interest and disparate bargaining power than dealership agreements, we are reluctant to conclude that Oklahoma courts would extend fiduciary duties based on the dealership agreement alone. Devery has not cited any Oklahoma precedent extending fiduciary duties to franchise or dealership agreements. This is not to say that a dealership agreement precludes the finding of a fiduciary relationship. As we have already stated, Oklahoma places no limits on the relationships out of which fiduciary duties may arise. The record in this case, however, does not provide a reasonable inference of a fiduciary relationship. In fact, upon review of the entire trial transcript, we find persuasive evidence to the contrary. For instance, the record reveals that Steiger was not Devery's primary line of tractors, but one of several short-line products which Devery sold. XIII R.S. 258. This fact alone would make it difficult for a reasonable trier of fact to conclude that Devery was forced by virtue of its weak position to allow a substitution of defendants will for its own. See Sellers, 428 P.2d at 236.
 
 
 27
 Nothing in the record indicates that the circumstances of this relationship would allow a reasonable and prudent person to repose trust and confidence in the defendants to the degree necessary to establish a fiduciary relationship under Oklahoma law. The record does contain evidence of concerted action in marketing, training, and financing; however, none of this evidence is significantly probative of the substitution of the will of defendants for that of Devery. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1985) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). As we have stated, "[m]ere concert of action, without more, does not establish a fiducial relationship...." Appleman, 217 F.2d at 848 (citations omitted). Furthermore, this case is unlike MidAmerica Savings & Loan Ass'n, in which a broker knowingly took unfair advantage of the weakness of another party. 886 F.2d at 1258. In that case, the broker misrepresented his ability when he knew the other party was in a weaker position and was relying on him. In this case, we have no evidence of misrepresentation or reliance.
 
 
 28
 The district court's ruling on the breach of fiduciary duty issue is inherently contradictory. On the one hand, the district court found that the contract could validly be terminated at will, which suggests that the parties bargained at arms length, each one pursuing its own interests. Yet, on the other hand, the district court found that fiduciary duties could arise out of the contract, which suggests that the parties were not bargaining at arms length. Given the lack of evidence of the required elements for the latter conclusion, we find no reasonable inference for any conclusion other than that the parties bargained at arms length without giving rise to fiduciary duties. See Appleman, 217 F.2d at 848-49.
 
 IV. Conclusion
 
 29
 In light of our holdings with regard to the breach of implied covenant and the breach of fiduciary duty, the remaining issues argued by the parties are irrelevant. We affirm the summary judgment on the bad faith claim, reverse the judgment on the fiduciary duty claim, and remand the case to the district court with instructions to vacate the judgment and enter judgment in favor of defendants.
 
 
 30
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 *
 The Honorable Myron H. Bright, United States Senior Circuit Judge, Eighth Circuit, sitting by designation
 
 
 [1]
 The district court granted summary judgment in favor of Tenneco on all claims. Devery does not appeal this determination
 
 
 [2]
 See infra note 6, p 4(b)
 
 
 [3]
 Devery cites Groendyke Transport, Inc. v. Gardner, 353 P.2d 695, 697 (Okla.1960) for the proposition that the contract was made in North Dakota because the final assent allegedly occurred there
 
 
 [4]
 The Hall court cited with approval the New Hampshire Supreme Court's opinion in Monge v. Beebe Rubber Co., 114 N.H. 130, 316 A.2d 549 (1974). Hall, 713 P.2d 1030 n. 3 & accompanying text. The Monge court extended the covenant of good faith and fair dealing to employment-at-will contracts
 
 
 [5]
 With respect to the course of dealing between the parties, as we noted above, Devery stipulated that it could not prove damages before the termination, and thus declined to go to trial on the issue
 
 
 [6]
 As evidence creating a material issue of fact as to mutual intent and control by defendants, the district court referred to the following boilerplate contract language:
 
 
 [2]
 PRIMARY PURPOSE
 (a) Both Dealer's and Company's primary purpose in entering into this agreement is to develop and promote the sale of products and to provide a high standard of parts availability and mechanical service to insure satisfaction by users of the products.
 ....
 
 
 [4]
 SALES RESPONSIBILITIES
 Dealer will:
 (a) Aggressively promote the sale of products in the trade area serviced by Dealer.
 (b) Achieve a satisfactory share of the market for products and service covered by this Agreement in Dealer's trade area. Dealer shall meet a minimum sales target for products as Company may establish from time to time. In determining the adequacy of Dealer's sales effort, it is agreed that primary consideration shall be given to dealer's sale achievement and market penetration in his trade area as compared with (i) Dealer's sales target; (ii) sales achieved by other dealers of Company; and (iii) other dealers selling products which are competitive in price and characteristics to those products covered by this Agreement.
 
 
 [7]
 PROMOTION AND SUPPLIES
 ....
 (b) Company will make available to dealer such technical and marketing support materials as in the judgment of Company may be desirable, either without charge or at such charge as Company specifies.
 Devery Implement Co. v. J.I. Case Co., No CIV-89-120-P, unpub. order at 25-26 (W.D.Okla. Sept. 29, 1989) (citing dealership agreement, Plaintiff's exhibit 1).